STANLEY W. PECK, Appellant, *v.* BURTON V. WOOMACK, Respondent.

No. 3510

April 20, 1948. 192 P.2d 874.

*Martin J. Scanlan,* of Reno, for Appellant.

*Thatcher, Woodburn & Forman,* of Reno, for Respondent.

## OPINION

By the Court, HORSEY, J.:

In this case the respondent, defendant in the court below, demurred to the amended complaint of the plaintiff (appellant), upon two grounds, namely, that the plaintiff, in his amended complaint, failed to state facts sufficient to constitute a cause of action, and that the allegations of the amended complaint were ambiguous, unintelligible and uncertain. The demurrer was sustained, and upon the plaintiff deciding to stand upon his amended complaint, for the purpose of appeal, and

declining to amend further, judgment was entered in favor of defendant and for his costs. From such judgment the plaintiff has appealed to this court. The parties will be designated herein as plaintiff and defendant, as they were in the court below.

The sufficiency of the amended complaint being the ultimate question to be determined upon this appeal, it appears advisable to incorporate same herein. Such amended complaint is as follows:

"The plaintiff by leave of the Court first had files this his amended complaint and for cause of action alleges:

"I. That on the 7th day of January, 1947, and during all the times herein mentioned, the defendant Burton V. Woomack was the leasee of a certain hotel building known as the Pioneer Hotel situated and numbered 138 East Commercial Row, in the City of Reno, Washoe County, Nevada, extending from said Commercial Row southerly and the rear wall of said hotel building abutting on East Douglas Alley between North Center Street and Lake Street in said City of Reno, Nevada.

"II. That during all the times herein mentioned, one Robert A. Ruble was the agent of defendant Burton V. Woomack and the manager of the said Pioneer Hotel; that sometime prior to the 7th day of January, 1947, the said agent engaged the services of defendant William J. Heffler to install terra cotta flues and reconstruct and encase same within a brick wall extending from the ground abutting on said East Douglas Alley upwards and above the roof at the rear of the building occupied by the said Pioneer Hotel.

"III. That upon information and belief at the time the said William J. Heffler was employed to construct said chimney, or alteration work thereon, the defendant Burton V. Woomack and his agent knew, or should have known, that the defendant William J. Heffler was not a contractor and was not licensed as such by the Nevada State Board of Contractors and that defendant William J. Heffler was not qualified nor capable nor experienced

in brick-laying or construction work, and that the said defendant Burton V. Woomack nor his agent, nor the said William J. Heffler had obtained a permit for said construction or alteration work from the Inspector of Buildings for the City of Reno, Nevada, nor had said Inspector of Buildings approved the manner in which brick-laying or construction work was being done at the time the injuries were sustained by plaintiff; that defendant Burton V. Woomack and his agent for the reasons herein stated, did not exercise due care in selecting said William J. Heffler for said construction work.

"IV. That during all the times herein mentioned the defendant Burton V. Woomack by and through his agent and manager had control and supervision over defendant William J. Heffler and the manner in which said William J. Heffler was performing the construction work described herein.

"V. That at the time plaintiff was employed by the agent of Burton V. Woomack and which was prior to January 7th 1947, said agent did not inform plaintiff that defendant William J. Heffler was not a licensed contractor and was unskilled in the laying of brick and construction work and plaintiff did not know and had no such knowledge of the incompetence of said William J. Heffler; that the agent of said Burton V. Woomack, in utter disregard for the safety of plaintiff, employed plaintiff to help and assist defendant William J. Heffler in mixing mortar and hoisting brick and mortar to said William J. Heffler who was working on a scaffold suspended from the roof and on the south side of said Pioneer Hotel building and above where plaintiff was working.

"VI. That the said William J. Heffler was an incompetent incapable bricklayer and was not a licensed and recognized contractor or bricklayer of experience and ability in that line of work; that the said defendant Burton V. Woomack, and his agent and servants knew, that at the time the said William J. Heffler was

constructing said chimney and encasing the same with brick, that the said William J. Heffler was performing such work and the handling and laying of the bricks in a careless, negligent and unworkmanlike manner that was dangerous and unsafe to the plaintiff who was working below the scaffold and assisting and helping the said William J. Heffler in the construction of the brick work encasing said chimney.

"VII. That on the 7th day of January 1947, while said defendant William J. Heffler was laying bricks several feet below the top of said roof and by reason of the carelessness and negligence of said defendant, William J. Heffler, a number of the bricks which said defendant William J. Heffler had laid became detached from said chimney or were being removed from the wall of said building, or were carelessly disposed on the scaffold where said William J. Heffler was working, and by reason of the carelessness and negligence and unworkmanlike manner in which the said William J. Heffler was constructing said brick wall encasing and enclosing said chimney, some of the bricks fell from said wall, or from the scaffold, and one of which struck the plaintiff on the forehead inflicting a deep, ugly, painful gash and concussion of the head, knocking plaintiff to the ground and seriously injuring the plaintiff and which necessitated a delicate and dangerous operation on plaintiff's skull, forehead and brain, and plaintiff thereby suffered great and grevious pain and injury.

"VIII. That at the time plaintiff suffered said injury neither defendant was a subscriber to nor had accepted the terms of the Nevada Industrial Compensation Law and plaintiff was not entitled to receive and did not receive any compensation from the Nevada Industrial Commission by reason of said injuries.

"IX. That by reason of said injuries, plaintiff incurred hospital bills in the sum of four hundred forty-nine and 90/100 ($449.90) dollars.

"X. That by reason of said injuries, the plaintiff has

been physically disabled and rendered unable to pursue his work as a laborer or any other kind of work from the 7th day of January 1947, to and including the 29th day of March 1947, save and except occasional few hours when plaintiff was able to do light work; that plaintiff lost in wages approximately five hundred and fifty ($550.00) dollars.

"XI. That as a result of the falling of said brick through the carelessness and negligence of defendants, the plaintiff has suffered injuries, pain and shock to the plaintiff's damage in the sum of twenty-five thousand ($25,000) dollars.

"Wherefore, plaintiff prays for judgment against the said defendants:

"1. For the sum of $25,000.00 as damages for injuries suffered by plaintiff;

"2. For surgical operation and surgical services in the sum of $2,025.00;

"3. For the sum of $449.90 for hospital expenses;

"4. For the loss of wages in the sum of $550.00;

"5. For plaintiff's costs and disbursements incurred herein."

It is apparent from the allegations of the amended complaint, and particularly from those of paragraph IV, that the plaintiff's primary theory of the relationship existing between Woomack, the defendant, and Heffler, who, it is alleged in paragraph II, was engaged to install terra cotta flues and reconstruct and encase same within a brick wall extending from the ground abutting on East Douglas Alley upwards and above the roof of the rear of the building occupied by the Pioneer Hotel, in the City of Reno, Nevada, was that of master and servant, or employer and employee.

Indeed, the allegations of paragraph IV are of facts, the existence or nonexistence of which is very generally considered the criterion or indicia in determining whether an employment relationship between an owner and one engaged by him to do construction work is that

of owner and independent contractor, or owner and mere servant and employee (see 27 Am.Jur. pp. 485–491).

■ It being definitely and positively alleged in paragraph IV of the amended complaint that at all the times mentioned therein the defendant Burton V. Woomack, by and through his agent and manager, had control and supervision over William J. Heffler and the manner in which the said William J. Heffler was performing the construction work described. Such allegation, together with all the other allegations of the amended complaint, with the exception of those in paragraph III relative to the knowledge or imputed knowledge on the part of Woomack and his agent, Ruble, to the effect that Heffler was not a licensed contractor, and the first clause in paragraph V, and the first clause in paragraph VI, also relative to such knowledge or imputed knowledge and the imputation of incompetency as a bricklayer, were sufficient, in our opinion, to constitute a cause of action upon the theory of the relationship of master and servant. It is clearly apparent, however, that the plaintiff was uncertain what the actual relationship was between the defendant, Burton V. Woomack, and his agent, Robert A. Ruble, on the one hand, and the plaintiff, Stanley W. Peck, on the other, and it appears fair to infer, from the undisputed facts and surrounding circumstances, that the plaintiff was not in an equally advantageous position with the defendant, Woomack, and William J. Heffler in the matter of knowledge of the transaction between Woomack and Heffler,—whether it was an arrangement whereby they intended to, and did, enter into a contract by which Heffler became an independent contractor, or whether they intended that what they said and did would serve to establish the mere engagement or employment of Heffler by Woomack to do a certain job of installation and brick laying, as a servant and employee.

It is evident that because of plaintiff's lack of *certain* knowledge as to such relationship, his attorney, Mr.

Scanlan, felt impelled to include the allegations in paragraphs III, V and VI, above referred to, alleging that Woomack knew, or should have known, that Heffler (then a defendant) was not a contractor, was not licensed as such by the Nevada Board of Contractors, and, in effect, that therefore he must be deemed to have known that Heffler "was not qualified nor capable nor experienced in brick-laying or construction work." This is an allegation that could be relevant or material only if the relationship was that of owner and independent contractor. It is not believed by us, however, that knowledge or imputed knowledge merely of the fact that no license as a brick-laying contractor had been issued to Heffler would justify the imputation that, because of not having been so licensed as such contractor, he "was not qualified nor capable nor experienced in brick-laying or construction work." It will be noted that the above words alleging lack of qualifications in bricklaying or construction work follow immediately, in paragraph III of the amended complaint, the words "the defendant Burton V. Woomack and his agent knew, or should have known, that the defendant William J. Heffler was not a contractor and was not licensed as such by the Nevada State Board of Contractors and * * * ," thereby clearly indicating, by the language used, that such lack of qualifications is to be imputed or inferred from the lack of a license.

The act creating a State Contractors' Board, and providing, among other things, for the licensing of contractors, is Chap. 186, pp. 442–447, of the Statutes of 1941.

Sec. 3. of article IV of said act prescribes the qualifications which the board shall require of applicants for a contractor's license, and is as follows: "Sec. 3. The board shall require an applicant to show such a degree of experience and such general knowledge of the building safety and health laws of the state and of the rudimentary principles of the contracting business as the

board shall deem necessary for the safety and protection of the public."

And article VII of said act makes it a misdemeanor to engage in the business or act in the capacity of a contractor within the state without having a license. Said article reads as follows:

"Sec. 1. It shall be unlawful for any person, firm, copartnership, corporation, association, or other organization, or any combination of any thereof, to engage in the business or act in the capacity of a contractor within this state without having a license therefór as herein provided, unless such person, firm, copartnership, corporation, association, or other organization, or any combination of any thereof is exempted as provided in this act.

"Sec. 2. Any violation of this act shall constitute a misdemeanor."

Sec. 3 of article IV does not prescribe that in order to be entitled to a license a person or other applicant shall himself be skilled in all classes of the work which, as a contractor, he wishes to undertake. He may be a general contractor and intend to let subcontracts for particular classes of the construction work, to those especially qualified to do, or cause to be done, skillful work of the particular kind or class referred to them.

Sec. 2 of article II of the act prescribes that "The term contractor for the purposes of this act is synonymous with the term 'builder.' " It does not provide that in order to procure a license an applicant contractor must be classified more specifically or particularly than the general term "builder," nor that a person must qualify as a skillful workman in a particular trade or calling in order to be entitled to a contractor's license. What the statute requires him to show is that he possesses "such a degree of experience and such general knowledge of the building safety and health laws of the state and of the rudimentary principles of the *contracting business* as the board shall deem necessary for the

safety and protection of the public." (Emphasis added.)

Analyzing this provision further, it simply means that the applicant for a license must have experience and knowledge of: (1) the building safety and health laws of the state; (2) the rudimentary principles of the contracting business; (3) that the experience as to the matters above mentioned shall be in such degree, and the general knowledge thereof, such as the board shall deem necessary for the safety and protection of the public.

■ It is, therefore, experience and general knowledge of the rudimentary principles of the *contracting business,* not of any particular branch or trade, concerning which the applicant must be qualified.

Consequently, to issue an applicant a license as a *general* contractor doesn't require that he shall qualify as to competency, skill or experience in a particular trade or classification within the general scope of the building or construction trades.

It is true, however, that by sec. 1 of article IV of the original act of 1941, Stats. 1941, p. 445, the board was directed to investigate and qualify applicants for a contractor's license, and authorized to issue contractor's licenses to qualified applicants; and by the amendatory act of 1945, Stats. 1945, chap. 184, pp. 296, 297, in sec. 1 thereof, the word "shall," which occurs in sec. 1 of article IV of the original act, was changed to "may," and the word "classify" added between the words "investigate" and "qualify"; also, provision was made for written or oral examinations. Also, by the said amendatory act of 1945, Stats.1945, p. 296, article III-A was added after article III of the original act, Stats. 1941, pp. 444, 445, and is as follows:

"Article III-A

"Classifications

"Section 1. The board may adopt rules and regulations necessary to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business, and may

limit the field and scope of the operations of a licensed contractor to those in which he is classified and qualified to engage. A licensee may make application for classification and be classified in more than one classification if the licensee meets the qualifications prescribed by the board for such additional classification or classifications. No additional application or license fee shall be charged for qualifying or classifying a licensee in additional classifications.

"Nothing contained in this section shall prohibit a specialty contractor from taking and executing a contract involving the use of two or more crafts or trades, if the performance of the work in the crafts or trades, other than in which he is licensed, is incidental and supplemental to the performance of work in the craft for which the specialty contractor is licensed."

While the State Contractors' Board, by said added article III-A, was empowered and "may adopt rules and regulations necessary to effect the *classification* of contractors in a manner consistent with established usage and procedure as found in the construction business, and may limit the field and scope of the operations of a licensed contractor to those in which he is classified and qualified to engage," it is not pleaded in plaintiff's amended complaint, as a basis for imputing to defendant Woomack and his agent knowledge that Heffler "was not qualified nor capable nor experienced in brick-laying or construction work," that the Board ever had adopted such rules and regulations implementing the above-quoted provision for classification, and thereby limiting the scope of the operations in which a licensed contractor may engage, or that they had provided for such special licensing. But assuming, for the present purpose, that the board had adopted such regulations, and was fully equipped to and engaged in issuing such special licenses, after the testing of the applicant's qualifications and finding them sufficient, no facts are alleged

in the amended complaint that Heffler ever made application for a contractor's license, either general or special, nor are any facts alleged disclosing that any application by Heffler, for either a license to engage in brick-laying contracting or any other form of contracting, was ever passed upon by the board adversely.

■ The said allegation in the amended complaint that Heffler "was not qualified nor capable nor experienced in brick-laying or construction work" appears, therefore, to be a mere conclusion of the pleader, in the absence of any allegation of foundational fact showing any rejection of any such application, for any reason of lack of suitable qualifications, or otherwise. We do not believe the mere failure of one in Heffler's position to make application for a contractor's license necessarily indicates lack of qualifications. The job was a small one, the actual work to be done by Heffler with only one assistant, such assistant to be furnished by Woomack. Facts are not alleged from which it can be determined whether Peck, the plaintiff, who was the man employed by Woomack's agent, Ruble, on behalf of Woomack, to assist Heffler on the job, was to be paid by Woomack and was his employee throughout and his services contributed under the terms of a contract with Heffler, or whether Peck was Woomack's employee, and, as contended by counsel for defendant, "loaned" to Heffler and to be compensated in the first instance by Heffler.

■ In other words, assuming for the moment the independent contractor relationship, there is nothing in the amended complaint to impel the conclusion that Heffler, under the assumed contract, was to become an employer of even one man. In the case of small contracts it is not uncommon for the owner employing a contractor to furnish the tools, materials and man, or men. While to do so indicates, somewhat, a master and servant relationship, it is by no means conclusive. See 27 Am.Jur., pp. 493, 494; on page 494 it is stated:

"Whether a contractor or employer furnishes or does not furnish the workmen and appliances by which certain work is done is not in itself decisive on the question of his independence. * * * However, a contractor may be independent, where he has control of the doing of the work, although the employer furnishes and pays certain workmen and furnishes certain appliances and tools for the prosecution of the work."

■ Furthermore, t h e r e is no allegation in the amended complaint disclosing that the aggregate contract price *to be paid to Heffler* was $300 or more. Unless it was, the contract would be exempt, under sec. 8 of article III of the said act of 1941, from the application of the act, and there would have been no duty on the part of the contractor, Heffler, to apply for a contractor's license. But even if the contract price was $300 or more, and which we must assume, in support of the amended complaint as against demurrer, it being incumbent upon the defendant to plead such exemption if it applied, the job was, at most, a small one, not greatly in excess of the exemption limit and not involving more than the employment of one man, if any. Under the circumstances, the violation, if any, of the law requiring a contractor's license would, at most be merely technical, rather than substantial. Under such facts and circumstances as are disclosed by the amended complaint, it is exceedingly doubtful whether the defendant, Woomack, if he knew, or should have known, that Heffler was not licensed as a brick-laying contractor, may properly be deemed to have known that he "was not qualified nor capable nor experienced in brick-laying or construction work."

■■ Said statute of 1941, Stats. 1941, pp. 442–447, making violation thereof a misdemeanor, is penal, and must be strictly construed. It prohibits only an independent contractor from entering into or undertaking such a contract job without a license—not the owner

employing or contracting with him. Under the statute it is not prescribed that the contract shall be void, and, under the circumstances alleged, the contract, at most, would be malum prohibitum—not malum in se. And the statute does not provide the additional penalty that one taking a contract without such license shall be deemed not competent, nor capable, nor experienced in the work of his trade or calling, nor one employing him shall be deemed to have known that he was incompetent, incapable or inexperienced. Such imputation would often be contrary to the facts, and certainly cannot be imposed when the statute does not do so. We can, therefore, attach little importance to such allegations in the amended complaint attempting to impute to the defendant, Woomack, or his agent, knowledge that Heffler was so incompetent and unskilled as a bricklayer that a man placed in the position in which Peck was placed on the job would be endangered by working with Heffler. Undoubtedly, however, the said allegation discloses the intent of the pleader to plead in the alternative the contractual relationship, as well as that of master and servant.

Under the master and servant theory, the allegations above mentioned, in paragraphs III, V, and VI of the amended complaint, attempting to impute to Woomack or his agent knowledge of Heffler's lack of qualifications as a brick-laying contractor, because he was nonlicensed and alleging that he or his agent failed to inform Peck, the plaintiff, of such dangerous incompetency, and was, therefore, negligent, would be entirely irrelevant, for the reason that, obviously, if Heffler merely engaged with Woomack or his agent, as a workman bricklayer, to perform the actual construction work by his own physical labor upon the project described in paragraph II of the amended complaint, he was not required, in order to be entitled to work as an individual bricklayer, to become licensed as a contractor.

Still pursuing the theory of contractual relationship, what, if any, other allegations of the amended complaint alleged facts sufficient, if sufficiently established by the evidence, to constitute negligence on the part of Woomack or his agent, Ruble, in placing his employee, Peck, the plaintiff, to work with Heffler on the bricklaying job described in the amended complaint, or in failing, after Woomack or his agent became aware that Heffler was performing his work, and was handling the bricks, in a careless, negligent and unworkmanlike manner on a scaffold above where Peck was working, to warn Peck that it was unsafe to continue to work below such scaffold where Heffler was working, or in failing to order or direct Peck to cease working with Heffler under the then existing conditions? It appears that sufficient facts are alleged in paragraph VI to show, by implication at least, actionable negligence on the part of Woomack or his agent, Ruble, imputable to Woomack, in failing to warn Peck of the dangerous situation in which he was working in relation with Heffler, after Woomack or his agent became possessed of knowledge that Heffler was so carelessly and negligently handling and laying the bricks, on the scaffold above where Peck had been assigned to work, that Peck was thereby endangered, or in failing to order Peck to cease working with Heffler unless the dangerous situation was rectified. It appears clear that the implication that Woomack or his agent, Ruble, after becoming aware that Heffler was doing the work in a careless, incompetent, negligent and unworkmanlike manner, failed to order or direct Peck to cease working in such position of danger with Heffler, is justified.

We are fully mindful of the fundamental rule that, ordinarily, an employee or servant employed by an independent contractor must look solely to such contractor for compensation, or damages if injured as a proximate result of the negligence of such contractor.

■ To this rule there are exceptions, which have been ably discussed in the briefs of respective counsel. Notable among such exceptions are:

1. When the contract is for work which, because of its nature or requirements, is inherently dangerous, or requires the use of dangerous instrumentalities, as, for example, explosives. In such cases the independent contractor and the employing owner or industrialist both are held liable, upon negligence being proved.

2. When the owner knows, or should know, that the contractor is so incompetent, inexperienced or unskilled in the particular kind of work required as to cause it to be dangerous to men on the particular job to work under his supervision. This exception contemplates or refers to the duty, if any, owed by an owner or party letting a contract to workmen *employed by and working for the independent contractor,*—whether because of employing such an incompetent contractor and thereby contributing to a condition which will serve as an invitation or opportunity to workmen to enter into employment made dangerous by the incompetency of the contractor, known to the owner but unknown to the workmen who will be imperiled by entering into the employment, the owner, or party letting the contract, becomes liable to a workman suffering injuries as a result of the contractor's negligence. The authorities are in conflict as to the liability of the owner, or party, employing the contractor, under such circumstances. See 27 Am.Jur., pp. 507, 508, sec. 28. The liability, according to the view of most authorities, depends upon whether or not reasonable care, or the care of an ordinary careful, prudent person, has been exercised by the owner in selecting the contractor.

■ In the instant case, however, we have a situation alleged in which Peck, the plaintiff, was primarily the employee of Woomack. Even if the theory advanced by defendant that Peck's services were "loaned" to

Heffler (which there is really nothing in the amended complaint or the alleged facts and circumstances to indicate) were accepted; he was employed in the first instance by Woomack or his agent, and did not voluntarily negotiate, or of his own initiative enter into, any employment with Heffler. If he had, he would be solely responsible for choosing his employer and deciding to enter into such employment. The facts as alleged show that Peck was, at least initially, employed by Woomack or his agent, and by their direction and instructions was placed in contact with Heffler, and directed to work on the job with Heffler. Under those circumstances, did the duty of the employer, Woomack, or his agent, end when they thus placed their employee at work on the job with Heffler? We think not. It was the duty of Woomack or his agent to employ the care of an ordinarily careful, prudent person to furnish the employee, Peck, a reasonably safe place to work, whether directly under the supervision and working for Woomack or his agent, or working for Woomack but temporarily under the supervision of a contractor employed by Woomack. See 27 Am.Jur. pp. 529, 530, and the many cases cited in footnote 18. In our judgment, it became the duty of Woomack to warn his employee, Peck, of the danger in which he was placed by working with Heffler, even if Woomack was originally unaware of Heffler's incompetency or carelessness, at the time Pack was directed to work for Heffler, by Woomack or his agent, Ruble. When Woomack or his agent became aware of the danger, by their observations disclosing the fact that Heffler was incompetent and was carelessly and negligently handling and laying the bricks and thereby endangering Peck, it then became Woomack's duty, or that of his agent, so observing the danger, to notify Peck, with reasonable dispatch, of the danger of continuing to work in the situation and under the conditions in which he then was.

It appears that under either theory, that of

independent contractor or master and servant, paragraph VI of the amended complaint alleges facts sufficient to show negligence on the part of Woomack, by himself or through his agent, Ruble, provided such agent was duly authorized, and provided they failed to warn Peck of the danger, or failed to order him to stop working on the job with Heffler, under the dangerous conditions existing. The failure so to order Peck to cease or desist from working, under the circumstances and in such position of danger, was clearly implied, because it is presumed an employee will obey the rightful commands or directives of an employer (31 C.J.S., Evidence, sec. 150, p. 840), and the fact that Peck continued working with Heffler after Woomack or his agent became aware of the careless, negligent and unworkmanlike manner in which Heffler was doing the work is sufficient basis upon which to infer that Woomack or his agent did not command or direct Peck to cease working under the dangerous conditions then existing. Assuming the independent contractor theory, Woomack or his agent would have had the right, and it would have been their duty, to have ordered Peck to quit working with Heffler, under the circumstances, whether Peck technically was "loaned" to Heffler and came under his supervision for the time b e i n g, or whether he remained entirely the employee of Woomack and primarily under his direction, or that of his agent. If Peck's services were contributed by Woomack or his agent, under the terms of the contract, Woomack would be responsible to Peck to use reasonable care to furnish him a safe place to work, or to see that same was furnished by Heffler, and could not rid himself of that responsibility by delegating his authority to Heffler. Woomack would, under such circumstances, have the right to withdraw Peck, or order him to cease working with Heffler, and would not thereby be breaking his contract with Heffler, for in any such contract there would be an implied condition that Heffler would use

reasonable care to furnish Peck a safe place to work, and would certainly not, himself, negligently and carelessly handle the bricks above where Peck was working, and subject him to danger of injury. A fortiori, if the master and servant theory should be shown to be the correct theory of the case, Woomack or his agent would have the right to remove one servant working with another servant, if the latter, through carelessness, subjected the former to the risk of injury.

As we view this case, paragraphs VII, VIII, IX, X and XI would be equally applicable whether the independent contractor relationship theory or the master and servant theory be ultimately found to be the correct theory of the case. And, in our view, the words in paragraph II of the amended complaint, "engaged the services," would as properly apply to the establishment of a contractor relationship as they would to the establishment of the relationship of master and servant.

Consequently, we find, and hold, that sufficient facts have been alleged in plaintiff's amended complaint to constitute a cause of action under either of such two of the above-mentioned theories.

The further questions with which we are now confronted are:

1. Was the amended complaint subject to *general* demurrer because of the effect of the alternative pleading?

2. If not, was the amended complaint subject to special demurrer upon the ground of uncertainty, or may the alternative pleading be justified because of the inequality in the positions of the respective parties, it being apparent that the facts of the negotiations and of the transaction which resulted from such negotiations and out of which the relationship of Woomack and Heffler arose were peculiarly within the knowledge of the defendant, Woomack or his agent?

3. Was it essential to specifically and expressly allege in the amended complaint that the acts of Ruble in

employing or engaging the services of Heffler and in connection with the performance of the contract (if there was a contract), or the performance of the work (if there was not a contract), were within the scope of his authority, or was it sufficient to show implied authority by alleging that Ruble was the agent of Woomack and was the manager of the Pioneer Hotel during all of the time mentioned in the amended complaint (as has been alleged by plaintiff in the instant case)?

The common-law rule against duplicity in pleading is one of the rules tending to produce singleness or unity of the issues, that the adversary may be apprised, with certainty, of the theories and issues he is called upon to meet. Illustrative of the application of the rule, it is stated, in 41 Am.Jur., on page 319, in sec. 44: "His pleading is double within this rule where it joins in one and the same count different grounds of action of different nature, or of the same nature, to enforce a single right to recovery; or where it is based on different theories of the defendant's liability."

In support of this statement in the text, cases are cited, in footnotes 12 and 13, from Georgia, Missouri, West Virginia, Washington, Montana, Texas and Utah.

This rule against duplicity in pleading is the basis for holding the pleading bad, upon demurrer, where the averments are in the alternative, and the allegations in support of one of the alternative theories are insufficient to constitute a cause of action upon that theory. See 41 Am.Jur. p. 317, sec. 41, and the cases cited in footnotes 10 and 11.

Counsel for defendant in the instant case have argued that the alternative averments are bad and subject to general demurrer because the averments in support of the independent contractor theory are, in their view, insufficient to establish liability, and, hence, the entire pleading must fail. But we have found that the averments under that theory are sufficient, for reasons which we have stated, to constitute a cause of action.

And we have found likewise as to the averments of the amended complaint properly applicable to the master and servant theory. It follows, therefore, that the principle applicable is that stated in said sec. 41, page 317, as follows: "Where both alternatives are good in substance, the pleading is not subject to a general demurrer." (Citing Doyal v. Russell, 183 Ga. 518, 189 S.E. 32). "Indeed, where the only effect of such allegation is to make the pleading uncertain, the remedy is by motion or special demurrer." (Citing cases from Minnesota, Oklahoma and Georgia.)

The court below merely sustained the demurrer, without specifying whether the ruling was directed to the general demurrer, the special demurrer, or both.

In volume 1 of Bancroft's Code Pleading, Practice and Remedies (Ten-yr. Supp.), sec. 180, p. 98, it is stated: "Sec. 180. Inconsistency Between Counts.—According to some courts, inconsistency between alternative counts may not be attacked by demurrer since each count stands on its own allegations, unaffected by those contained in the other counts."

In support of the text, the following California cases are cited: Penziner v. West American Finance Co., 133 Cal.App. 578, 24 P.2d 501; Little v. Union Oil Co., 73 Cal.App. 612, 238 P. 1066.

In 21 Cal.Jur., p. 108, sec. 69, it is stated: "Sec. 69. Defects Not Reached By General Demurrer.—A general demurrer—that is, a demurrer upon the ground that the complaint does not state facts sufficient to constitute a cause of action—does not reach defects made grounds of special demurrer, such as want of capacity to sue, misjoinder of causes of action, misjoinder of parties, and unintelligibility, ambiguity or uncertainty."

In support of the text, many cases are cited, in footnote 18.

■ As our Nevada Civil Practice Act was originally, adopted from the California Code of Civil Procedure, the California cases dealing with procedural questions are

properly entitled to great weight by the courts of this state. And in 21 Cal.Jur., p. 126, sec. 81, it is stated: "Of course the judgment rendered will be reversed upon appeal where the demurrer sustained is general, and the complaint in effect states a cause of action." (Citing Swain v. Burnette, 76 Cal. 299, 18 P. 394.)

 In answer to our question No. 1 above, we feel constrained to hold, in accordance with the California authorities and the great weight of authority elsewhere, that the amended complaint in the instant case was not subject to general demurrer because two divergent alternative theories are presented therein, as sufficient facts were alleged to constitute a cause of action under either of such theories.

To determine whether or not the special demurrer should have been sustained upon the ground of uncertainty, because of the pleader having indulged in averments supporting alternative theories different, but not necessarily conflicting, we must bear in mind that the parties, Peck, the employee or workman, on the one hand, and Woomack or his agent, Ruble, and Heffler, on the other, were not in an equal position to know the facts as to what transpired at the time of the business transaction between Woomack, or his said agent, and Heffler, which resulted in the relationship between Woomack and Heffler, the nature of which is the subject of the present controversy. There is nothing to show that Peck was present upon that occasion, and it is unlikely he knew at the time the amended complaint was prepared, or has known since, any facts or circumstances indicating what then transpired, or what kind of relationship was intended by the parties, or resulted from their conferences and negotiations, except what he had been told. Under such circumstances, if compelled to elect between two possible or probable theories before becoming cognizant of the actual facts, from the evidence to be adduced at the trial, the plaintiff would be placed at a great disadvantage. His choice would be

merely guesswork on his part, which might well prove fatal to his cause, however just it may be, if he happened to guess wrong and adopt a theory which, upon the facts being adduced at the trial, was subsequently shown to be untenable. No great disadvantage to the defendant appears probable by permitting alternative pleading by the plaintiff under such circumstances. The defendant, knowing the facts, can readily, in his pleading, adapt himself to the task of answering the alternative pleading, by denying or moving to strike the allegations pertaining to the theory which he knows to be incorrect, and by pleading such defenses as he may have to the allegations pertaining to the correct theory. At the time of the trial it would become apparent, from the evidence, which of the two theories, *if either*, was proved sufficiently to justify a verdict or judgment for the plaintiff. Upon one of the theories being sufficiently proved to be the correct theory, the averments of the pleading shown to be in accord with that theory as thus established by the evidence would be accepted, in support of the verdict, or findings and judgment, and the averments supporting the incorrect theory rejected, as redundant and as surplusage.

In a situation such as that with which we are confronted in the instant case, the rule or principle which we believe to be the better rule and sustained by the weight of modern authority is clearly and ably stated by the learned author of the treatise on pleading (from which we have hereinabove quoted), in 41 Am.Jur., sec. 42, pp. 317, 318, as follows: "Sec. 42.—Modification Of Rule.—The rule against pleadings in the alternative has undergone considerable modification. In many jurisdictions the controlling practice provisions recognize or authorize the right of a pleader to aver statements of claim alternatively or hypothetically, and it seems generally to be recognized that a party who is uncertain as to the grounds of his claim or defense may state his cause

of action or defense in whatever different ways may be necessary to meet possible proof. Thus, where the exact relations existing between the defendants at the time the cause of action arose are not definitely known to anyone but themselves, and for this reason the plaintiff is doubtful about the particular facts which he can establish on the trial, he is allowed to plead alternative allegations, and a like rule applies where the pleader has no knowledge as to which of two sets of facts should be alleged, and the opposite party would be equally liable under either. Of course, an immaterial inconsistency between averments will be disregarded."

In footnote 17 to the text, attention is directed, as showing the modern trend, to rule 8(e) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides "a party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses."

The following cases are cited, in footnotes 18 and 19, in support of the text of said section 42, pages 317, 318, of 41 Am.Jur.: Culver v. Metropolitan Life Ins. Co., 36 Del. 345, 175 A. 768, citing R.C.L.; Floyd v. Patterson, 72 Tex. 202, 10 S.W. 526, 13 Am.St.Rep. 787; Annotation 51 L.R.A., N.S., 642; Annotation 50 L.R.A., N.S., 12; Heitzman v. First Nat. Bank, 83 Colo. 476, 266 P. 213, citing R.C.L. See, also, 49 C.J. pp. 378, 379, and the cases therein cited.

■ We believe, therefore, that the alternative pleading in the instant case was permissible under the exception to the general rule, because of very great difference in the situation of the parties with respect to the degree of knowledge possessed respectively by them as to what occurred between Woomack or his agent and Heffler, resulting in a certain relationship between Woomack and Heffler, and as to the nature of that relationship. It follows that the answer to our second question above

propounded is that the special demurrer, upon the ground of uncertainty by reason of the alternative averments of the amended complaint, should have been overruled.

The question remaining for determination is, in substance: Was the plaintiff required to plead more specifically that the action by Ruble, the alleged agent of Woomack, was within the scope of Ruble's authority? It is specifically alleged in paragraph II of the amended complaint that at all the times mentioned in the amended complaint Robert A. Ruble was the agent of Burton V. Woomack, and the manager of the Pioneer Hotel. The Pioneer Hotel is the building in connection with which terra cotta flues were to be installed, reconstructed and encased within a brick wall, by Heffler, either in the capacity of independent contractor, or of employee. Doubtless, due to the age of the building and its condition, it could well have been foreseen that a condition of emergency might develop, because of which, in order to prevent fire, speedy action to install terra cotta flues and to reconstruct same and encase same in a brick wall (which the arrangement with Heffler contemplated) might suddenly become necessary. It is reasonable to believe such condition was foreseen by the owner, Woomack, and that in constituting Ruble his agent, as alleged, and in making him manager of his hotel, that he intended to confer upon Ruble, as such agent, authority to do whatever might be reasonably necessary in such an emergency. Besides, such duties and authority are compatible, we believe, with the usual duties and authority of the manager of a hotel. In fact, it is our view that Ruble, as the agent of Woomack, bearing in mind the probable emergency nature of the work, had such authority virtute officii, and that the allegation that Ruble was the agent of Woomack and manager of his hotel was a sufficient allegation that Ruble had implied authority, as such manager, to enter into a contract with, or to employ, Heffler to do the work which it is

alleged in the amended complaint he was engaged to do. The rule is stated in 2 C.J. 643, as follows: "It will be sufficient to bind the principal for acts or contracts of the agent that they were reasonably necessary to keep the property in good repair or the business a going concern, or to protect the interests confided to the management of the agent; * * *." See, also, 2 C.J., Agency, sec. 103.

In the instant case, besides the allegation in paragraph II of the amended complaint, above mentioned, "that during all the times herein mentioned, one Robert A. Ruble was the agent of defendant Burton V. Woomack and the manager of the said Pioneer Hotel," the plaintiff alleged also, in the same paragraph II, "that sometime prior to the 7th day of January, 1947, the said agent engaged the services of defendant William J. Heffler to install terra cotta flues," etc. There can be no serious doubt that the pleader intended to allege, and that the allegation fairly conveys the idea, that Ruble, *as such agent,* engaged the services of Heffler. If so, he was holding himself out as having the authority to do what he was then doing, namely, engaging the services of Heffler, and he was purporting to exercise such authority and act within its scope. This allegation appears sufficient at least to authorize proof of the agent's authority. A person is presumed to do his duty and to act regularly and within the scope of his authority, until the contrary appears. Jones on Evidence in Civil Cases, vol. 1, sec. 48, p. 82; 31 C.J.S., Evidence, sec. 150, p. 840.

This presumption, coupled with the facts alleged in said paragraph II of the amended complaint, rendered it unnecessary for plaintiff to plead more. The duty of pleading would thereupon devolve upon the defendant to meet this presumption, by pleading in his answer, by way of defense, that the agent, Ruble, was not so authorized, or had acted in excess of his authority, if such be the fact.

We have considered the cases of Stewart v. Lafoe, 194 Ky. 655, 240 S.W. 57; Galveston, H. & S. A. Ry. Co. v. Henefy, Tex.Civ.App., 99 S.W. 884; and Weatherford, M. W. & N. W. Ry. Co. v. Crutcher, Tex.Civ.App., 141 S.W. 137, cited by defendant and discussed in his answering brief.

In Stewart v. Lafoe, supra, facts were not alleged to show "that at the time of the accident the chauffeur was in charge of or operating the car by the authority or with the knowledge of appellee or within the scope of his employment." He had been previously employed as chauffeur, but there was no allegation that at the time of the accident he was appellee's chauffeur, or acting as such. In the instant case it *is* alleged that at all times mentioned in the amended complaint Ruble was the agent of Woomack and the manager of the Pioneer Hotel, and that the said agent engaged the services of Heffler, thus representing that Ruble was then such agent and acting as such. If the then existing agency had not been alleged in the instant case, and also action by the agent, of course it could not be presumed that Ruble was acting within the scope of his employment. The opinion in Stewart v. Lafoe, supra, while reciting, among other deficiencies, the lack of an allegation that the action of the chauffeur was within the scope of his employment, does not state that such allegation would have been necessary had the essential allegations of agency and action as agent been present. So we do not deem the case in point.

In Galveston, H. & S. A. Ry. Co. v. Henefy, supra [99 S.W. 885], it was alleged "that appellee was acting within the scope of his duties," then other allegations followed which disclosed that Means, in throwing an alleged piece of ice off of the train and striking appellee acted beyond the scope of his duties, and this, in effect, refuted the former allegation that he had acted within the scope of his authority. So it was not a question of the effect of the absence of an allegation that he acted

within the scope of his employment which was decided but that, it appearing from the latter allegations that he acted beyond the scope of his duties, it followed, as a matter of substantive law, that plaintiff had no cause of action. Eliminating dicta, the point actually decided was not similar to the point involved in the instant case.

The other Texas case cited by defendant, namely, Weatherford, M. W. & N. W. Ry. Co. v. Crutcher, supra, appears to be in point and to hold, in effect, that the failure to allege in the petition that the servant acted within the scope of his employment rendered the petition subject to general demurrer. There are many authorities, however, which hold otherwise. The Texas courts are not entirely consistent in their decisions upon this question. In Jackson-Foxworth Lumber Co. v. Hutchinson County, Tex.Civ.App., 88 S.W. 412, there is no allegation that the agent acted within the scope of his authority, or employment, but it was held, in effect, that where, in an action against a county, the petition alleged that plaintiff furnished defendant, at the instance and request of the county, *acting through a specified agent,* certain materials, for which defendant obligated itself to pay, it stated a cause of action good against a general demurrer, inasmuch as it authorized proof of the agent's authority.

There is some conflict in the authorities, but we believe the better rule is indicated by the following statement in 2 C.J., pp. 905, 906: "Where it is regarded as only necessary to aver the act of an agent as the act of his principal, without alluding to the fact of agency, a general allegation that the act was done by defendant is held to be in effect, among other things, an allegation that the agent had authority to act in the premises. Likewise, where agency is alleged, a general allegation is sufficient, without averring that the agent had authority to act in the premises, that being regarded as an averment of a conclusion of law, or at best an unnecessary repetition of a fact already stated." See, also, the

cases cited in footnotes 87, 88, 89 and 90; 3 C.J.S., Agency, sec. 312.

In Singer Sewing Mach. Co. v. Phipps, 49 Ind.App. 116, 94 N.E. 793, it was held, in effect, that a complaint need not allege facts peculiarly within defendant's knowledge, such as the extent of the authority of defendant's agents. In the annotation in footnote 89 of 2 C.J., p. 906, the following is stated in relation to the case of Childress v. Emory, 8 Wheat., U.S., 642, 5 L.Ed. 705: "Although it may be technically more accurate to aver that the principal by his agent, *in that behalf duly authorized,* committed the act pleaded, yet such an averment is not indispensable." (Emphasis added.) See, also, 3 C.J.S., Agency, sec. 312.

It is our view that the burden of pleading as to the authority of an agent, its scope and its extent, should be, as pointed out in the Indiana case of Singer Sewing Mach Co. v. Phipps, supra, upon the party presumably possessing superior knowledge in regard thereto. Following that principle, the soundness and justice of which can scarcely be seriously questioned, plaintiff should be required to bear the burden of pleading, in the first instance, as to the authority, and the scope thereof, of *plaintiff's* agent, and defendant likewise as to the authority of *defendant's* agent, and its scope or extent.

We conclude, therefore, that the district court erred in sustaining defendant's demurrer. The demurrers, both general and special, should have been overruled. This error compels reversal.

We believe the foregoing determinations and conclusion we have reached conform to the clear mandate of sections 8621 and 8622, N.C.L.1929, which very clearly command liberality in the construction of pleadings, and require our courts to disregard errors or defects in the pleadings or proceedings which do not affect the substantial rights of the parties.

It is our decision and order that the order of the district court sustaining defendant's demurrer, and that

honorable court's judgment against plaintiff and in favor of defendant for his costs, be, and the same are hereby, reversed, and the cause remanded for such further proceedings, in accordance herewith, as are requisite and appropriate in the premises.

BADT, J., concurs.

Chief Justice EDGAR EATHER, because of illness, did not participate in the preparation or rendition of the foregoing opinion.