LEE R. GLOVER,

*Plaintiff and Respondent,*

vs.

JOHN BERGER and HARRY J. BERGER,

*Defendants and Appellants, and*

MINNIE B. BERGER,

*Defendant.*

(No. 2726; March 6th, 1956; 294 Pac. (2d) 793)

192

194

For the defendants and appellants, the cause was submitted upon the brief of R. G. Diefenderfer of Sheridan, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief of Tom Morgan of Gillette, Wyoming, and Maurer & Garst of Douglas, Wyoming.

## OPINION

PARKER, Justice.

This is an appeal from a judgment which set aside, as constructively fraudulent, certain conveyances of lands and mining claim interests from John Berger and Minnie B. Berger, husband and wife, to Harry J. Berger, their son. Briefly stated the relevant facts are:

On September 13, 1951, John Berger shot Lee R. Glover. On October 17, 1951, Lee R. Glover in Crook County commenced an action for damages resulting from assault and battery committed by Berger. This suit resulted in a judgment of $15,000.00 plus costs in favor of Glover entered on October 29, 1952, appealed and affirmed on appeal (Glover v. Berger, 72 Wyo. 221, 263 P. 2d 498). On October 6, 1952, during the pendency of the damage action in the District Court of Crook County, John Berger and Minnie B. Berger transferred to their son, Harry J. Berger, (a) by warranty deed some 4640 acres of ranch land, (b) by quit claim deed their interests in certain placer mining claims. On January 24, 1953, Glover caused execution to be issued against the John and Minnie B. Berger property, which execution was returned wholly unsatisfied.

On February 13, 1954, Glover brought the present action praying that the conveyances from John and Minnie B. Berger to Harry J. Berger be set aside as fraudulent and void. Defendants John Berger, Minnie B. Berger, and Harry J. Berger each filed separate demurrers against plaintiff's petition urging that it was insufficient because of defective allegations in para-

graphs four and five. The two paragraphs thus attacked by defendants read:

"4. After Plaintiff's said case against said Defendant had been set for trial, anticipating a judgment might be rendered against him, Defendant John Berger, together with his wife, Defendant Minnie B. Berger, conveyed all the above-described property to their son, Harry J. Berger, for a consideration disproportionately small when compared to the value of said properties and which conveyances rendered said Defendant John Berger wholly insolvent and regardless of said convayances, the said Defendant remained in possession and control of said property purportedly conveyed, copies of the deeds of conveyances of said property and the recording endorsements being hereto attached as Exhibits 'A' and 'B' and by such reference made a part hereof.

"5. Said conveyances were made by Defendants John Berger and Minnie B. Berger and accepted by Defendant Harry J. Berger without consideration, or if any consideration was passed, the same was disproportionate to the value of the property purportedly conveyed and was made with the intent to hinder, delay and defraud this Plaintiff."

The court sustained the demurrer of Minnie B. Berger, overruled the demurrers of John Berger and Harry J. Berger; and the case proceeded to trial against the two defendants. The court found that the conveyances should be set aside to the extent necessary to satisfy plaintiff's former judgment, interest, and costs thereon, that the property should be sold in parcels, subject to an existing mortgage on the property, to the homestead exemption of John Berger in the amount of $4,000.00, and to payment of the amount of $8,773.57 to Harry J. Berger ($6,288.50, consideration paid; $322.56, interest on bank notes and mortgage accrued to October 10, 1952; $27.95, revenue stamps and recording; $150.00, attorney fees; $1,984.56, improvements in drilling and equipping two wells). From this judgment defendants John Berger and Harry J.

Berger have appealed, specifying as error the over-ruling of each of the demurrers and the making and entering of the judgment contrary to the law and the evidence. Minnie B. Berger, having been "absolved of all liabilities as the result of this action," did not appeal.

The brief of defendants John Berger and Harry J. Berger discusses the alleged error of the court in over-ruling the demurrer of each defendant as if the matter were a single ruling, and we shall so consider it here. Defendants charge that paragraphs four and five of the petition are duplicitious because:

" * * * In paragraph 4, it is charged that the consideration from Harry was 'disproportionately small' and in paragraph 5, first, that the conveyances were made 'without consideration,' then, in the alternative, 'if any consideration was passed, the same was disproportionate to the value of the property conveyed and was made with the intent to hinder, delay and defraud this plaintiff.' "

Defendants further state:

" * * * an allegation of no consideration is inconsistent with and repugnant to one admitting that a consideration was given but alleging that it was 'disproportionate.' * * *

" * * * the Petition does not plead a cause of action based on lack of 'fair consideration,' as contemplated by the Act [Section 5-201 ff., W.C.S., 1945]. * * * "

They cite definitions of "disproportionate," of "fair consideration," and analyze the meaning of various other words sometimes used in discussions of fraudulent conveyances.

In our inquiry into the sufficiency of plaintiff's petition, it is advisable to consider the entire pleading as a unit rather than piecemeal. Plaintiff's counsel have conceded that the petition is verbose, inexpertly drawn, and not precise or exact. We therefore consider what construction the trial court should properly have

placed upon such a petition, admittedly imperfect—in the light of authorities contruing the sufficiency of petitions against general demurrers.

" * * * the rule according to many cases is that when attacked by demurrer upon the ground that it fails to state facts sufficient to constitute a cause of action, a complaint or petition will be liberally construed and upheld where it contains allegations of facts sufficient reasonably and fairly to apprise the defendand of the nature of the claim against him * * * " 1 Bancroft's Code Pleading (1926), p. 154.

"With respect to the petition of the plaintiff, we may say that while the same may be inartificially drawn and it may state conclusions of law, however the defendant Sam Miller did not see fit to attack this pleading by a motion, or otherwise, and it has been stated by this Court: 'In absence of motion to have petition made more specific, court must construe its allegations liberally in determining whether judgment is based on proof of cause of action properly pleaded.' Chesney v. Valley Live Stock Co., 34 Wyo. 378, 244 P. 216, 44 A. L. R. 1255." Goldberg v. Miller, 54 Wyo. 485, 493, 494, 93 P. 2d 947, 950, 96 P. 2d 570.

" * * * The petition should be construed liberally in order to promote the objects of the Code of Civil Procedure and assist the parties in obtaining justice. Section 5532, Wyo. Comp. Stat. 1920 [§ 3-102, W.C.S., 1945]." Smith v. Gorsuch, 36 Wyo. 430, 433, 256 P. 664, 665.

See also Church v. Blakesley, 39 Wyo. 434, 273 P. 541; Hitshew v. Rosson, 41 Wyo. 509, 287 P. 316.

Review of the rules relating to alternative pleading discloses the following discussions on the subject:

"Certain of the authorities condemn pleadings in the alternative as a violation of the rule that averments must be direct and positive in character, and have ruled against their sufficiency on general demurrer. The weight of authority, however, rather favors the rule that averments in the alternative are sufficient in the absence of a special demurrer or motion directed to the ambiguity or uncertainty resulting from their

presence,—thereby affording an opportunity to correct the fault by amendment. * * * " I Bancroft's Code pleading (1926), p. 73.

"The rule against pleading in the alternative has undergone considerable modification. In many jurisdictions the controlling practice provisions recognize or authorize the right of a pleader to aver statements of claim alternatively or hypothetically, and it seems generally to be recognized that a party who is uncertain as to the grounds of his claim or defense may state his cause of action or defense in whatever different ways may be necessary to meet possible proof. Thus, where the exact relations existing between the defendants at the time the cause of action arose are not definitely known to anyone but themselves, and for this reason the plaintiff is doubtful about the particular facts which he can establish on the trial, he is allowed to plead alternative allegations, and a like rule applies where the pleader has no knowledge as to which of two sets of facts should be alleged, and the opposite party would be equally liable under either. * * * " 41 Am. Jur., Pleading § 42. Citing Peck v. Woomack, 65 Nev. 184, 192 P. 2d 874; Saliba v. Saliba, 201 Ga. 577, 40 S. E. 2d 511; Emrie v. Tice, 174 Kan. 739, 258 P. 2d 332; McGrath v. Dubs, 127 Mont. 101, 257 P. 2d 899.

An impartial analysis of the inartfully drawn petition in this case should, in line with these authorities, be reasonable rather than technical, and made in the light of the fundamental obligation of every pleader—to apprise his adversary of the nature of the claim against him. Any such survey leads us to a consideration of the meaning and use of several words such as "disproportionate to the value," "fair consideration," etc. We find the following cases among others dealing with the subject.

" * * * 'not dispropotionate to the value' is rather a circumlocutory form for 'equal in value,' and we think it is sufficient [discussing a specific performance action]. * * * " Kerr v. Moore, 6 Cal. App. 305, 92 P. 107, 108.

"It is provided in the Code of Civil Procedure (section 1552); 'Upon the hearing, the court must examine the return and witnesses in relation to the same, and if the proceedings were unfair, or the sum bid disproportionate to the value, and it appear that a sum exceeding such bid at least ten per cent, exclusive of a new sale, may be obtained, the court may vacate the sale and direct another to be had.' * * * In addition to the fact that it must appear that a sum exceeding such bid at least 10 per cent may be obtained, it must also appear either that the proceedings were unfair, or that the sum bid was disproportionate to the value. 'Disproportionate to the value' means disproportionate to the value at the time of the bid. It would not be sufficient for the court to merely find that a sum exceeding the bid 10 per cent may be obtained, but it must also find that the bid at the time it was made was disproportionate to the value, or that the proceedings were unfair. [discussing sales of realty] * * * " In re Leonis' Estate, 138 Cal. 194, 71 P. 171, 172, 173.
" * * * Under such circumstances there must be a *fair consideration*, and a fair consideration means one not disproportionate to the value of the property conveyed. In other words, it must be a fairly adequate consideration. [discussing a suit to set aside a fraudulent conveyance] * * * " Buhl v. McDowell, 51 S. D. 603, 216 N.W. 346, 347.
" * * * In Buhl v. McDowell, 51 S. D. 603, 216 N.W. 346, the decision against the creditor was reversed on the ground that the finding that the transfer was 'for a good and valuable consideration' did not support a conveyance which rendered the grantor insolvent, but that under such circumstances there must be a finding of a 'fair consideration,' which means one not disproportionate to the value of the property within the provision of section 4 of the Uniform Fraudulent Conveyance Act (section 8478, G. S. 1923), and that the burden was on the spouse to prove a 'fair consideration.' [discussing an action to set aside a fraudulent conveyance] * * * " Klaseus v. Meester, 173 Minn. 468, 217 N.W. 593, 594.

From the vocabulary in these and similar cases, it would appear that (a) the use of "disproportionate" is common in the discussion of fraudulent conveyances

and improper sales, and (b) neither legislatures nor courts are unduly restrictive in their interpretation of the words employed in discussing the subject.

The phrase "disproportionately small when compared to the value" might not be the choice of a connoisseur of the English idiom desiring to say that the "conveyance was made without fair consideration," but would seem to sufficiently inform defendants of plaintiff's basic complaint. The statement in paragraph five of the petition that "said conveyances were made * * * without consideration, or if any consideration was passed, the same was disproportionate to the value of the property * * * " indicates that plaintiff did not know and apparently was unable to ascertain what the consideration was. Unless we are highly technical in our interpretation of words, either alternative is sufficient, even under the case of Zuniga v. Evans, 87 Utah 198, 48 P. 2d 513, 517, 101 A.L.R. 532, cited by defendants. The court in that case said inter alia:

" * * * It ought to be sufficient, we think, in a case of this kind, to allege, in addition to necessary matters of inducement, that at a certain time the defendant accused made the conveyance which is attacked; that he was then insolvent, if such be the fact, or that he was thereby rendered insolvent, if that be the fact; and that such conveyance was made without any consideration passing from the grantee to the grantor therefor, or that a fair consideration was not paid, according to the fact which the pleader intends to prove. * * * "

Both alternatives being good in substance, the pleading, though possibly vulnerable to special demurrer or motion, is not subject to a general demurrer. See 41 Am. Jur., Pleading § 41, and Doyal v. Russell, 183 Ga. 518, 189 S.E. 32, 41.

Defendants say that plaintiff did not plead the prior judgment in compliance with § 3-1412, W.C.S., 1945,

entitled "Pleading a judgment," and that the pleading was therefore defective. The general rule on that subject seems to be:

" * * * The judgment should be pleaded in the ordinary way, either by employing the abbreviated form provided by statute or by setting forth the facts. "Thus if the judgment is by a court of general jurisdiction it is sufficient to allege the commencement of the action in the court, naming it, and the recovery or rendition of a judgment in favor of the plaintiff in a specified sum. Under such circumstances the jurisdictional facts are presumed. * * * " 3 Bancroft's Code Pleading (1926) pp. 2141, 2142.

Plaintiff did not follow the short form but in paragraph one of his petition used the words "trial was had which resulted in a judgment for Plaintiff against said Defendant for $15,000." Although this statement fails to say that there was a "recovery or rendition of a judgment," we think the words used were sufficiently similar to the criteria established by the cases and texts to be synonymous for all practical purposes. The parties and the court were thus well aware of the existence of a judgment. Applying the general rules, permitting liberal construction of a complaint, the petition is sufficient, especially since there is no indication that defendants were surprised or injured by the allegations.

We now come to a consideration of defendants' thesis that the judgment entered by the lower court was contrary to law and contrary to the evidence.

On this subject, defendants' counsel in his brief says:

"The matter put in issue by the pleadings for determination by the Court, as far as material for the purposes of this appeal, were:

"(1) The extent of John Berger's ownership or interest in the mining claims described in the Petition.

"(2) The market value of such ownership or interest.

"(3)   The market value of the 46,40 acres of land conveyed.

"(4)   Whether any consideration was paid by Harry, and, if so, whether it was 'disproportionate' to the market value of the lands and mining claims interest.

"(5)   Whether the conveyances were made with 'intent to hinder, defraud and delay' the plaintiff.

"(6)   Whether they were fraudulent as a matter of law.

"(7)   If they were legally but not actually fraudulent, the amounts in which Harry should be recompensed.

"(8)   Whether John was rendered insolvent by the conveyances."

Although some of these points are merely mentioned but not urged, it may be well to consider each of them, identified by the designated numbers, and in the order listed by the defendants.

On issue (1) Harry J. Berger testified that his father owned an eighth interest in mining claims, and this testimony stands uncontroverted.

As to issue (2), we find some evidence that the mining claims had no value, and no evidence that they had any value. Plaintiff admits that he proved none, but moves toward a cure of the omission by urging that the conveyances of the ranch land and the mining claims "were both part of one transaction." We find no authority to warrant the setting aside of a conveyance as fraudulent on such ground. On the contrary, "it has generally been held that the courts will not treat as fraudulent voluntary transfers of property having no value at all or trivial value." 37 C.J.S., Fraudulent Conveyance § 10. The mining claims may have had value, but we are not at liberty to speculate. Plaintiff by neglecting to present evidence on the subject failed to bring himself within the statute sufficiently to warrant a judgment on that phase of the case.

On issue (3), Guy Kimsey testified that the value of the ranch land was $12.50 an acre and defendant John Berger testified that the land was worth $3.00 per acre. Thus, there was a substantial conflict in the evidence on the value of the land; and the trial court was entitled to resolve this. See United States Fidelity & Guaranty Co. v. Cook, 43 Wyo. 356, 5 P. 2d 294; Vissenberg v. Bresnahen, 65 Wyo. 367, 202 P. 2d 663, 203 P. 2d 966; Montgomery Ward & Co. v. Arbogast, 53 Wyo. 275, 81 P. 2d 885; Goldberg v. Miller, 54 Wyo. 485, 93 P. 2d 947, 96 P. 2d 570. From this evidence, the trial court found that the conveyance of the land was "fraudulent as to the Plaintiff," and that "Harry J. Berger * * * had given less than a fair consideration." This finding was justified.

Defendants' discussion of issue (4) regarding the market value of the ranch land occupies itself with distinctions between the meaning of the phrases "less than a fair consideration," "payment * * * disproportionate to the value of the property," and the like. As we indicated in discussion on the subject of pleading, such distinctions are untenable.

On number (5) the court found there was no proof of Harry J. Berger's actual intent to defraud and there is no issue on this point.

On issue (6) the court found the conveyances to be fraudulent as a matter of law, since Harry J. Berger gave less than a fair consideration for the property, and, subject to certain reimbursement to the transferee, set aside the transfer to the extent necessary to satisfy plaintiff's judgment.

Defendants raised no question regarding the court's exoneration of Harry J. Berger as to actual intent to defraud, and defendants do not *further* urge their objections to the trial court's finding that defendant Harry J. Berger "gave less than a fair consideration for the real property."

They do insist on point (7), that Harry J. Berger as purchaser had a right to recover for interest, taxes, and improvements, *without* his being obligated to pay rental for the use and occupancy of the property because no evidence of rental value was before the court. On this subject, it should be noted that notwithstanding the statement in plaintiff's petition that John Berger remained in possession of the property, Harry J. Berger in his answer to interrogatories stated that he had been in possession since the date of the conveyances.

Defendants quoted from 37 C.J.S., Fraudulent Conveyances § 280 f. and g. to the effect that a grantee in a deed only constructively fraudulent is entitled to reimbursement for interest on encumbrances, taxes, and improvements. We agree with defendants in this view; but we call attention of counsel to the "In General" portion of the same section in which it is said, "where the conveyance is only constructively fraudulent, it may be set aside on such terms as will protect the equities of the purchaser." This would seem to indicate that the principles of equity should govern *all* parties concerned. A further interesting statement in the same encyclopedia is found at § 279 b. (2) :

" ‚* * * it is generally held that if a creditor has no other resource for the collection of his debt, or his claim is not fully satisfied by the sale of the property fraudulently conveyed, he may have a decree against the fraudulent grantee for an account of rents and profits while the property was in his possession to the extent that may be necessary to satisfy his claim * * * ."

See 24 Am. Jur., Fraudulent Conveyances § 130, to the same effect. An interesting discussion on this subject is found in 1 Glenn, Fraudulent Conveyances and Preferences (1940), p. 430, which discusses such a situation and points out the reciprocal obligations, on the one hand for the grantee to account for rents and

profits, and on the other, for the creditor to reimburse the purchaser for necessary outlay to the property.

It seems clear that the defendant Harry J. Berger should recover the amounts of interest and taxes which he has proved he paid, but not without accounting for the reasonable rents and profits on the property during the time he had it. Inasmuch as the court took no evidence as to the rents and profits, the finding that:

"Harry J. Berger made other and further expenditures for taxes and interest on the bank note and mortgage, and interest on the purchase price, repayment of which is disallowed on the grounds and for the reason that these monies constitute a fair rental for the use and occupancy of said premises during the term held by the Defendant, Harry J. Berger"

is unjustified. Defendant Harry J. Berger should be cognizant of the fact that the amount to be allowed by the court for such rentals *may* exceed the amount of reimbursements to which such defendant is entitled. However, if he so desires, the matter should be determined by the court.

We now consider issue (8) raised by the defendant, whether or not John Berger was proved to be insolvent. The allegation in paragraph two of plaintiff's petition was that an execution against the property of defendant John Berger was returned "wholly unsatisfied." This allegation was uncontroverted and constitutes a prima facie showing of the insolvency of John Berger.

" * * * where it is shown that execution has been issued and returned unsatisfied, the burden shifts to the grantee to show that, after making the fraudulent conveyance, the grantor retains sufficient property to pay his debts. * * * " 37 C.J.S., Fraudulent Conveyances § 387.

" * * * The return of an execution unsatisfied is prima facie evidence of insolvency, and in such case the burden of going forward to show that the judgment debtor retained sufficient other property to pay

the obligation is upon him. * * * " Berndt v. Berndt, 192 N.Y. Misc. 57, 79 N.Y.S. 2d 143, 145.

It was the obligation of defendant John Berger to controvert this statement of plaintiff if he so desired, and this he failed to do.

Recapitulating our views, we think that (a) the setting aside of the quit claim deed to the mining claims was unsupported by evidence and the judgment should be amended accordingly, and (b) defendant Harry J. Berger is entitled to reimbursement for taxes and for interest on encumbrances, *less fair rental for his use and occupancy of the property;* and if said defendant elects (not otherwise), the court should reopen the case for a determination on this point.

Subject to these two noted exceptions, the judgment is affirmed.

*Affirmed as modified.*

BLUME, C. J., and HARNSBERGER, J., concur.