SIERRA PACIFIC POWER COMPANY, a Nevada Corporation; IDAHO POWER COMPANY, a Foreign Corporation, Appellants, v. SANDRA S. RINEHART, Individually, and PAMELA WEEKS HAHN, Respondents.

No. 14327

June 24, 1983                        665 P.2d 270

[Rehearing denied September 7, 1983]

*Beasley & Holden, Woodburn, Wedge, Blakey and Jeppson, Leggett & Hamilton,* Reno, for Appellants.

*Bradley & Drendel,* Reno, for Respondents.

## OPINION

*Per Curiam:*

In this appeal from a judgment in a wrongful death action, appellants challenge the trial court's decision that: (1) as landowners, appellants breached three separate duties which they owed to the decedent by not providing any safety devices during construction; and (2) as the proximate cause of their negligence, the decedent's mother suffered damages in the sum of $800,280. We conclude that appellants did not owe the decedent a duty under any of the three theories upon which liability was based. Initially, in light of the obviousness of the danger, the trial court erred in imposing on appellants the common law duty of a landowner to an invitee to keep the premises in a reasonably safe condition. Further, the lower court erred in holding that appellants had a statutory duty, pursuant to NRS 618.395, to provide employees a safe place to work because, contrary to its ruling, the Nevada Occupational Safety and Health Act does not create a civil remedy in an employee's favor. Finally, the lower court improperly ruled that appellants breached their nondelegable duties, under sections 413 and 416 of the Restatement of Torts, to provide special precautions because employees are *not* included in the term "others" for the purposes of those sections. Accordingly, we reverse the lower court's judgment.

On September 1, 1978, appellant, Sierra Pacific Power Company (Sierra Pacific), hired Stone & Webster Engineering Corporation (S & W) as a general contractor to design and construct a coal-fired electricity generating station on a parcel of land which Sierra Pacific owned in Valmy, Nevada. The construction project was to be known as the Valmy Power Plant Project.[1] S & W in turn contracted with Ecodyne Cooling Products (Ecodyne) to erect a cooling tower at Valmy.

---

[1] On December 12, 1978, Sierra Pacific sold half of its interest in the Valmy Project to appellant Idaho Power Company (Idaho). As a result of the sale, Idaho acquired a 50 percent interest in the real property on which the plant would be built, the completed project and the electrical power which would eventually be generated at the facility. Idaho also shared those contractual obligations into which Sierra Pacific had already entered.

On April 15, 1980, James Hahn, employed by Ecodyne as a laborer, sustained fatal injuries as a result of a 50 foot fall while working on the construction of the cooling tower. As a result of the accident, Nevada Industrial Commission paid and continues to pay Hahn's widow death benefits under Ecodyne's policy. In addition, Hahn's widow and his mother brought a wrongful death action against appellants based on negligence, pursuant to NRS 41.085(2). After a bench trial, judgment was entered in favor of respondents. The court awarded $800,280 to Hahn's mother, but his widow was denied relief.

The trial court determined that appellants, as landowner-contractees, were liable for the death of James Hahn in that they breached three separate duties which they owed Hahn by not providing any safety devices for the protection of the employees during the construction of the cooling tower. These three duties are as follows: (1) a common law duty of a landowner to an invitee to keep the premises in a reasonably safe condition; (2) a statutory duty to provide employees a safe place to work pursuant to NRS 618.395; and (3) a nondelegable duty to take precautions against peculiar risk of harm to others.

The district judge concluded that appellants, by virtue of their status as landowners, owe a common law duty to invitees to keep their premises in a reasonably safe condition and to exercise reasonable care to protect invitees on their property. The court further found that appellants breached this duty by failing to provide or cause to be provided rails, nets or solid planking at the construction site. Appellants contend that such a duty does not extend to obvious dangers that were present in the instant case nor does it require them to provide a safe place to work. We agree.

An employee of a contractor is an invitee of the owner to whom the owner owes a duty to exercise reasonable care. Davis v. Whitsett, 435 P.2d 592 (Okla. 1967). The owner is also under a duty to warn an invitee of hidden dangers. This duty does not, however, extend to obvious dangers. Worth v. Reed, 79 Nev. 351, 384 P.2d 1017 (1963). Therefore, because the danger, *i.e.*, the height of the cooling tower, was obvious to all, appellants were not under a duty to warn its invitees of the danger. Furthermore, although there is a common law duty to provide a safe place to work, Monroe v. City of New York, 414 N.Y.S.2d 718 (1979), "the owner of the property is under no duty to protect the employees of an independent contractor

from risks arising from or intimately connected with defects or hazards which the contractor has undertaken to repair or which are created by the job contracted.'' Celender v. Allegheny County Sanitary Authority, 222 A.2d 461 (Pa. 1966). Here, the dangerous condition complained of was created during the course, and as a necessary consequence of, building the cooling tower. Accordingly, appellants, as landowners, had no common law duty to take safety precautions during the construction.

The district judge also found that appellants had a statutory duty to provide the decedent with a safe place to work pursuant to NRS 618.395. That section of the Nevada Occupational Safety and Health Act provides: ''An employer, owner or lessee of any real property in this state shall not construct, cause to be constructed or maintained any place of employment that is not safe and healthful.'' In rendering judgment in favor of respondents, the trial court determined that appellants breached this duty by failing to provide any safety devices. Appellants contend that the trial court erred in relying upon a violation of NRS 618.395 as a basis for imposing liability. Appellants' contention is meritorious. In Frith v. Harrah South Shore Corp., 92 Nev. 447, 552 P.2d 337 (1976), we held that the Occupational Safety and Health Act ''does not create, either directly or impliedly, a private civil remedy in favor of employees.'' *Id.* at 451. Thus, NRS 618.395 did not create a duty for appellants to provide Hahn with a safe place to work.

The final theory of liability is based on the Restatement (Second) of Torts § 416 (1965) which provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Relying on the foregoing provision, the trial court determined that appellants breached their nondelegable duty to take precautions against peculiar risk of harm to others by not providing any safety devices. Appellants contend that sections 413 and 416 are not applicable to the instant case because the

employee of an independent contractor is not included in the term "harm to others."[2] We agree.

A split of authority exists as to the meaning of the word "others" as used in sections 413 and 416 of the Restatement. A few jurisdictions have held that the employees of an independent contractor come within the definition of "others". *See* Woolen v. Aerojet General Corporation, 369 P.2d 708 (Cal. 1962); Giarratano v. Weitz Company, *supra.* On the other hand, several courts have held that the phrase "harm to others" does not include employees of the independent contractor but refers to third parties. *See, e.g.,* Nelson v. United States, 639 F.2d 469 (9th Cir. 1980); Welker v. Kennecott Copper Company, 403 P.2d 330 (Ariz. 1965). We believe the better reasoned position is that taken by those courts which have held that the employees of an independent contractor are not included in the definition of the word "others". For example, in *Nelson* the court concluded that employees of an independent contractor should not be included within the Restatement's definition of "others" when the contractor is solvent and as well informed and as competent as the employer in the methods necessary to avoid accidental injuries to workers. In reaching its decision the court stated:

> To begin with, the rationale of the independent contractor exception, as well as criticisms of it, are most soundly based on issues of knowledge and secondary or indirect costs of avoiding accidents. The decision to place liability on one group of potential defendants stems from the recognition that, because of greater knowledge about or ability to reduce safety risks, the placement of liability on this group will keep the number and costs of accidents, both in economic and human terms, at a minimum. [Footnote omitted.] In this case, as the trial court observed, "the Government was not privy to any particular knowledge

[2]Section 413 provides as follows:

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

This section differs from section 416 only to the extent that it imposes direct liability on the employer when he made no provision in the contract or otherwise for the taking of required precautions.

which was not available to the contractor." . . . There is no suggestion here that the Government was in a better position than the contractor either to anticipate dangers to workmen, to foresee and evaluate the best methods of protection, or to implement and enforce compliance with appropriate on-site safety precautions. As long as an independent contractor is informed about particular safety risks, and is competent and solvent, there is no reason in law or policy why he alone should not be fully responsible for injuries to workmen arising out of the performance of inherently dangerous jobs in which the contractor has special skill and experience not shared with the owner.

Nelson v. United States, 639 F.2d at 478.

We find the *Nelson* rationale to be equally applicable to the instant case. Here, Ecodyne, and not appellants, has special skills and experience in the construction of cooling towers. Consequently, the independent contractor is more aware of the particular risks involved in such construction and is in a better position to take special precautions to protect against any peculiar dangers. It is for these very reasons, *i.e.,* Ecodyne's knowledge and expertise, that appellants contracted with Ecodyne to build the cooling tower. Furthermore, if we were to include Ecodyne's employees within the category of "others" referred to in the Restatement, we would effectively subvert the cogent holding of Celender v. Allegheny County Sanitary Authority, *supra,* which exempts an owner from a duty to protect such employees from risks arising from an independent contractor's work project. We, therefore, believe that it is inappropriate in this case to impose liability on appellants. Accordingly, we hold that appellants are not liable for injuries to the employees of its independent contractors.

Because our decision concerning the issue of liability is dispositive of this appeal, we find it unnecessary to consider other issues raised by the parties. Accordingly, we reverse the judgment of the district court.