GEORGE KARADANIS, ROBERT M. MALOFF, DBA SUN-
DOWNER HOTEL CASINO, ET AL., APPELLANTS AND
CROSS-REPONDENTS, v. LARRY NEWCOMB, RESPON-
DENT AND CROSS-APPELLANT, AND MORROW CRANE
CO., AND LINDON–ALIMAK, A.K., CROSS-
RESPONDENTS.

No. 15226

April 25, 1985 698 P.2d 872

*Fahrenkopf, Mortimer, Sourwine, Mousel & Sloane;* Reno,
*Terry, Winter & Wessel,* Carson City, for Appellants and Cross-
Respondents Karadanis and Maloff.

*David Hamilton,* Reno, for Respondent and Cross-Appellant
Newcomb.

*C. Frederick Pinkerton,* Reno, for Cross-Respondent Morrow
Crane Co.

*Vargas & Bartlett,* Reno, for Cross-Respondent Lindon-
Alimak.

## OPINION

*Per Curiam:*

On September 22, 1978, respondent Newcomb was working as a sheetrock taper on a construction project at the Sundowner Hotel in Reno. Newcomb had been taping sheetrock on the second floor of the building. After lunch he was working on the first floor, finished what he was doing, and went to get some supplies off of a forklift. After getting the supplies, he proceeded through an unfamiliar area on the construction site in order to be of assistance to some sheetrock hangers. He found his path blocked by construction supplies, and while trying to determine how to get where he wanted to go, he was knocked to a sitting position and crushed by a descending personnel elevator (manlift). One of the sides of a wire mesh safety enclosure around the manlift had been inexplicably removed and was not in place at the time of the accident.

Newcomb believed that as he stepped into this unfamiliar area he was still inside the building. Unfortunately, he had in reality exited the structure, which was not yet sheetrocked, into the "footprint," or zone of danger of the manlift. Newcomb testified that he had never used the manlift and was not aware of its

location or even its existence. He sustained severe injuries which resulted in paralysis from the waist down. Subsequently, and as a result of the initial injury, he suffered a right-sided cerebral stroke which resulted in left-side paralysis, and some mental impairment as well.

The Sundowner premises and improvements were at the time of the accident owned by Lake Tahoe Inns, a California corporation, and leased to the Sundowner Hotel and Casino, a general partnership composed of appellants Karadanis and Maloff. Lake Tahoe Inns had entered into a construction contract with Cal-Neva H.K.M. Construction Company to construct an addition to the Sundowner.[1]

The mentioned manlift was manufactured by Lindon-Alimak and had been leased to Cal-Neva by Morrow Crane Company. The purpose of the manlift was to transport workers to the upper floors of the project until all the concrete had been poured and the interior elevators were installed. Morrow Crane provided an advisor to assist with the placement and installation of the manlift. The advisor's recommendation that the manlift be installed at the rear of the new structure was rejected by Karadanis because the plans called for the alley at the rear to have a canopy covering; this meant that the canopy would have to be constructed after the manlift was removed, resulting in a higher construction cost. An alternate location was later rejected for similar reasons. The location ultimately chosen was problematic in that the architectural features of the structure would not accommodate the mandatory safety enclosure which was part of the manlift. The location finally selected by Karadanis also placed the manlift, pit, and enclosure partially on the *leased* property and partially on property owned by the City of Reno, rather than on the construction site property. The lift was installed, and the problem of inability to keep the safety enclosure in place was resolved by removing the north "wall" of the safety enclosure with a cutting torch. Before the operating permit inspection, a section of cyclone fence was attached by Karadanis as a substitute for the missing north wall in an attempt to jerry-build a "complete enclosure" as required by safety regulations. At some time later, however, the temporary fenced section of the enclosure was removed and never replaced, thus leaving the north side of the manlift unenclosed and in a dangerous condition on the day of the accident and for an appreciable time before the accident.

Newcomb brought a negligence action against Karadanis and an action against Morrow Crane Company based on strict prod-

---

[1]Karadanis, the lessee, was also an officer in Lake Tahoe Inns, a partner in Cal-Neva, and was the general foreman on the construction project.

ucts liability. The jury returned a verdict against Karadanis in negligence and found that Newcomb was ten percent comparatively negligent, by reason of which the award of $5,050,000.00 was reduced to $4,545,000.00 plus costs. The jury found for Lindon-Alimak and Morrow Crane Company on the products liability claim. Karadanis appeals from that judgment. Newcomb cross-appeals from the finding of non-liability on the part of Lindon-Alimak and Morrow Crane Company and from amendment of the judgment which reduced the interest thereon from twelve percent per annum to seven percent per annum.

Karadanis first contends that he owed no legal duty to Newcomb, an employee of an independent contractor, because the unsafe condition was open and obvious. In *Sierra Pacific Power Co. v. Rinehart,* 99 Nev. 557, 560, 665 P.2d 270, 272 (1983), we stated:

> An employee of a contractor is an invitee of the owner to whom the owner owes a duty to exercise reasonable care. Davis v. Whitsett, 435 P.2d 592 (Okla. 1967). The owner is also under a duty to warn an invitee of hidden dangers. This duty does not, however, extend to obvious dangers. Worth v. Reed, 79 Nev. 351, 384 P.2d 1017 (1963).

*Rinehart* involved an employee of an independent contractor who fell to his death from a 50-foot cooling tower which the independent contractor had contracted to construct. We reasoned there that "the danger, i.e., the height of the cooling tower, was obvious to all" and that the defendant was "not under a duty to warn its invitees of the danger." *Id.* at 560. Karadanis contends *Rinehart* is dispositive of this issue, arguing that as a matter of law Newcomb should reasonably have noticed the orange color of the "mast" which supports the manlift, that he should have been aware he was outside and not still inside the hotel addition, and that he should have seen or heard the descending manlift. Our review of the record leads us to conclude otherwise, as there was ample evidence from which the jury could have found that the hazardous condition was not open and obvious. There was conflicting testimony as to the level of noise made by the manlift relative to the overall noise level at the busy construction site and other evidence which would support the conclusion that the danger was not open and obvious.

Karadanis also contends that there was, as in *Rinehart,* a dangerous condition inherent in the construction project. We observed in *Rinehart* that "the dangerous condition complained of was created during the course, *and as a necessary consequence*

*of,* building the cooling tower." *Id.* at 561 (emphasis added). The dangerous condition in the instant case was not a necessary consequence of the construction, but, rather, arose out of the modification of the manlift by removing a portion of the mandatory safety enclosure.

A land survey determined that the accident occurred on premises leased by the Sundowner partnership rather than on the actual construction site. Karadanis, however, maintains that he had relinquished possession and control of that area to H.K.M. Cal-Neva Construction Company. This was a question of fact, however, and one for the jury to resolve. Although the testimony was conflicting, we conclude the jury could reasonably have found that Karadanis, in his capacity as lessee of the Sundowner, maintained such possession and control of the premises as to justify the jury's verdict.

The jury was given an instruction based on the Restatement of Torts (Second) § 318 (1965). That section, in pertinent part, states:

> If the actor permits a third person to use land or chattels in his possession . . . he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor
> (a) knows or has reason to know that he has the ability to control the third person, and
> (b) knows or should know of the necessity and opportunity for exercising such control.

This is a clear articulation of the duties of a possessor of land. The instruction was proper, and the jury could reasonably have found liability based on it.

We have carefully considered the remaining contentions of error on both appeal and cross-appeal and conclude that they do not constitute error when viewed either individually or cumulatively. Accordingly, we hereby order the judgment of the trial court, in all respects, affirmed.