Lloyd **LITTLEFIELD,**
**Plaintiff–Appellee,**

v.

**UNITED STATES of America,**
**Defendant-third-party**
**plaintiff-Appellant,**

v.

**Frontier–Kemper Constructors, Inc.,**
**Third-party-defendant-Appellee.**

Nos. 89–16087, 89–16230.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1990.

Decided March 12, 1991.

William G. Cole, U.S. Dept. of Justice, Washington, D.C., Paul Wommer, Asst. U.S. Atty., Las Vegas, Nev., for defendant-third-party-plaintiff-appellant.

R. Jay Engel, Law Offices of R. Jay Engel, San Francisco, Cal., for plaintiff-appellee Littlefield.

Robert D. Vannah, Vannah & Roark, Las Vegas, Nev., for third-party-defendant-appellee Frontier–Kemper.

Before ALDISERT[*], KOZINSKI and NELSON, Circuit Judges.

THOMAS G. NELSON, Circuit Judge:

We must determine if the district court properly applied Nevada law in this Federal Tort Claims Act case when it held the United States liable for injuries suffered by a contractor's employee in an accident at the Hoover Dam in Nevada.

The United States appeals from an amended judgment awarding $1,035,150.78 to Lloyd Littlefield, an employee of Frontier–Kemper Constructors, Inc. Littlefield sued the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and §§ 2671 *et seq.*, for negligence in the ownership, operation, maintenance, control, supervision, inspection and management of Frontier–Kemper's construction work. The United States impleaded Frontier–Kemper. After a bench trial, the district court held the United States liable for Littlefield's injuries and held the United States was entitled to indemnification from Frontier–Kemper for one-half the total award of damages to the plaintiff.

Trial court jurisdiction was proper based on 28 U.S.C. § 1346(b). Jurisdiction on appeal is proper under 28 U.S.C. § 1291. Because we hold the district court based its decision on an erroneous reading of Nevada law, we reverse the amended judgment. We do not reach the indemnity issue since

we decide the government is not liable for Littlefield's injuries.

I

In 1985 the Bureau of Reclamation of the Department of the Interior (the "United States") awarded Frontier–Kemper a contract for spillway modification and repair work on the Hoover Dam. The contract required Frontier–Kemper, as general contractor, to excavate concrete and rock for aeration slots, to construct reinforced aeration slots and to perform concrete repairs in damaged areas of the spillway tunnels. Frontier–Kemper was also required to remove the concrete and rock ("muck") excavated by the blasting and chipping.

The contract required Frontier–Kemper to observe construction safety and health standards promulgated by the Secretary of Labor and published by the Bureau of Reclamation. Additional provisions of the contract bearing on safety responsibilities were as follows:

d. ... When violations of the safety and health requirements contained in these specifications or standards referenced in subparagraph a. are called to [the Contractor's] attention ... the Contractor shall immediately correct the condition to which attention has been directed....

e. In the event the Contractor fails or refuses to promptly comply with the compliance directive issued under subparagraph d. above, the Contracting Officer or his authorized representative may issue an order to stop all or any part of the work. When satisfactory corrective action is taken, an order to resume work will be issued.... Failure of the Contracting Officer or his representative to order discontinuance of any or all of the Contractor's operations shall not relieve the Contractor of his responsibility for the safety of personnel and property.

The contract called for the United States and Frontier–Kemper to comply with 29

[*] Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting

by designation.

C.F.R. § 1926.650, which provides in pertinent part:

Daily inspections of excavation shall be made by a competent person. If evidence of possible cave-ins or slides is apparent, all work in the excavation shall cease until the necessary precautions have been taken to safeguard the employees.

The contract also included the rights and obligations of 29 C.F.R. § 1926.3, which gives the Secretary of Labor or any authorized representative the right of entry to any site of contract performance to inspect contract performance.

The nature of the work involved at the construction site, as found by the district court, was as follows: Concrete and rock were blasted and chipped away from the Nevada aeration slot and fell into the spillway tunnel which slanted downward at a 50–degree incline, coming to rest near the elbow of the spillway tunnel, where the tunnel began to run horizontally to an outlet portal. The construction crew called this material the "muck pile." The muck pile accumulated from February 12 to March 6, 1986, when the blasting and excavation of the aeration slots was finished. Frontier–Kemper then began the "mucking operation" to remove the muck pile from the elbow of the Nevada spillway.

The removal procedure selected and used by Frontier–Kemper was to pull down the front of the muck pile with a backhoe and then use a front-end loader to scoop up the debris and load it into two "muck trucks" that would transfer the material to another location for disposal. After the muck pile had receded to the point the backhoe could no longer be used for excavation, Frontier–Kemper began using a "slusher" machine on April 1, 1986, to remove the remaining 2,000 cubic yards of muck. The "slusher" consisted of a steel bucket pulled by steel cables up the incline and then reversed to drag down the slope, pulling the muck with it. During the excavation and mucking operation, approximately 300 to 450 gallons of water per minute ran down the spillway and through the muck pile.

On April 18, 1986, Frontier–Kemper employee Lloyd Littlefield replaced an ill muck truck driver. While Littlefield and another driver were standing next to their trucks, approximately 20 to 40 feet from the slusher machine, the entire muck pile dislodged and slid down the spillway tunnel, pinning Littlefield under the slusher machine. Littlefield suffered serious injuries, including a crushed leg requiring partial amputation.

The United States and Frontier–Kemper had discussed the potential danger of a slide at a Joint Safety Policy Meeting on March 4, 1986. The danger was thereafter considered by a government safety manager and two safety engineers and was brought to the attention of Frontier–Kemper employees prior to April 18, 1986. Following the March 4 meeting, no precautions were taken by the contractor to prevent the slide, nor did the United States issue a stop-work order.

The district court found the United States and Frontier–Kemper knew of the danger of a possible slide of the muck pile which was being removed by the slusher operation and negligently failed to safeguard Littlefield from injury. The district court further found the removal of the muck pile lodged in a 50–degree angle portion of the spillway constituted a peculiar or special risk as the terms are defined in Sections 413 and 416 of the RESTATEMENT (SECOND) OF TORTS. The court thus concluded:

4. The contract between Defendant United States and Third–Party Plaintiff Frontier–Kemper contained a general provision requiring Frontier–Kemper to take reasonable precautions to protect the health and safety of employees and Defendant United States also reserved the right to inspect and stop any and all work, thereby retaining some responsibility over matters of employee safety. Therefore, the failure of the government employees to fulfill this retained responsibility for securing compliance with safety rules constitutes negligence. *Camozzi v. Roland/Miller and the United States of America,* 866 F.2d 287 (9th

Cir.1989); *McGarry v. United States,* 549 F.2d 587 (9th Cir.1976).

5. While, generally speaking, the mere reservation of a right to inspect work performed by an independent contractor, does not impose upon the United States government any duty of inspection or control, this rule does not apply to a factual background, such as this where the work is dangerous. *Thorne v. United States,* 479 F.2d 804, 809 (9th Cir. 1973); *McGarry v. United States,* 549 F.2d 587 (9th Cir.1976); *Rooney v. United States,* 634 F.2d 1238, 1244 (9th Cir. 1980); *Camozzi v. Roland/Miller and the United States of America,* 866 F.2d 287 (9th Cir.1989).

6. When work to be performed entails a special risk, the duty to provide the necessary precautions cannot be delegated to an independent contractor. The failure to have said precautions in place constitutes negligent conduct by Defendant. Restatement of Torts 2d, §§ 413, 416; *McGarry v. United States,* 549 F.2d 587 (9th Cir.1976); *Camozzi v. Roland/Miller and the United States of America, supra; Rooney v. United States, supra; Thorne v. United States, supra.*

District Court Decision at 12–13.

## II

Under the Federal Tort Claims Act, the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. To determine whether a private person would be liable, the court must apply "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Littlefield's accident occurred in Nevada; thus, the question is whether the district court properly applied Nevada tort law in placing liability on the government. The issue presented concerns a question of law, which we review *de novo. U.S. v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ The district court expressly tied the government's liability to the existence of a nondelegable duty, as enunciated in the Restatement of Torts. The district court's prediction of how the Nevada Supreme Court would rule on the issue of nondelegable duty owed to a contractor's employee was based on federal cases. However, the court did not consider the case of *Sierra Pacific Power Co. v. Rinehart,* 665 P.2d 270 (Nev.1983) (per curiam), in which the Nevada Supreme Court held that a landowner does not have a nondelegable duty to ensure the safety of a contractor's employees. Because a federal court applying state law is bound by the decisions of that state's highest court, *Olympic Sports Products, Inc. v. Universal Athletic Sales Co.,* 760 F.2d 910 (9th Cir.1985), *cert. denied,* 474 U.S. 1060, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986), the district court's application of Nevada law in this case was incorrect.

The nondelegable duty theory relied on by the district court in its opinion is set forth in the RESTATEMENT (SECOND) OF TORTS, §§ 413 and 416:

§ 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor.

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

§ 416. Work Dangerous in Absence of Special Precautions.

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of harm *to others* unless special precautions are

taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise. [Emphasis added.]

Thus, Section 413 states the duty of the employer to require its contractor to take necessary precautions against risks inherent in the work to be done by the contractor. Section 416 states that the employer has a nondelegable duty to others to see that the contractor takes such precautions, even if the employer has imposed that duty on the contractor.

■ Courts have developed two interpretations of the term "others." Some courts have held that the term does not include the contractor's employees; while others, including the district court here, have held the term does include contractor's employees. *See Nelson v. U.S.*, 639 F.2d 469, 474–75 (9th Cir.1980) (collecting cases); and *Sierra Pacific v. Rinehart*, 665 P.2d at 273–74. After considering both interpretations, the Nevada Supreme Court concluded in *Rinehart* that "the better reasoned position is that taken by those courts which have held that the employees of an independent contractor are not included in the definition of the word 'others,'" particularly "when the contractor is solvent and as well informed and as competent as the employer in the methods necessary to avoid accidental injuries to workers." 665 P.2d at 273–74.

In rejecting Sections 413 and 416 as a basis for landowner/employer liability, the Nevada Supreme Court found the reasoning of *Nelson v. U.S.*, 639 F.2d 469, to be compelling. 665 P.2d at 274. In *Nelson*, the plaintiff's decedent drowned while working for a contractor of the United States Coast Guard on a wave suppressor machine in hazardous wave conditions. *Nelson*, 639 F.2d at 471, 476. This court reversed the judgment in favor of the plaintiff, stating:

In this case, as the trial court itself observed, "the Government was not privy to any particular knowledge which was not available to the contractor." There is no suggestion here that the Government was in a better position than the contractor either to anticipate dangers to workmen, to foresee and evaluate the best methods of protection, or to implement and enforce compliance with appropriate on-site safety precautions. As long as an independent contractor is informed about particular safety risks, and is competent and solvent, there is no reason in law or policy why he alone should not be fully responsible for injuries to workmen arising out of the performance of inherently dangerous jobs in which the contractor has special skill and experience not shared with the owner. *Id.* at 478 (citation omitted).

■ Littlefield argues that notwithstanding the district court's reliance on Sections 413 and 416 of the Restatement, the judgment must be upheld because the court held the United States independently liable for failing to require the independent contractor to enforce safety provisions as provided by the contract. This argument fails to recognize the fundamental distinction between liability imposed under tort law and the limited rights and obligations of signatory parties under contract law.

Tort liability is imposed by conduct of persons under circumstances in which a duty arises to another person, and a breach of that duty is the proximate cause of injuries and damages to that person. Liability under contract law is limited to the rights and obligations of the contracting parties expressed in the agreement. This distinction, although basic hornbook law, bears emphasis here because Littlefield's theory of the government's independent tort liability is predicated on the safety provisions of the agreement between the government and the contractor.

The written agreement between the United States and Frontier–Kemper merely establishes the rights and obligations of the parties. As we have observed, the contract gives Frontier–Kemper ultimate responsibility for safety during the operations, but it also requires both the United States and Frontier–Kemper to make daily inspections

of the excavation site and to stop all work upon evidence of a possible cave-in or slide in accordance with 29 C.F.R. § 1926.650. This clearly gives the United States a contractual right to inspect and to stop the work if necessary. But the contract goes no further. It does not provide that the government becomes an indemnitor if the work is not stopped and an employee of the contractor is injured; stripped to its basics, that is precisely what Littlefield's argument would have us read into the contract.

Littlefield's contention that the government is independently liable seems to ignore that this action was brought under the Federal Tort Claims Act, and that under that statute the federal government is liable only to the same extent that an individual may be held liable under the tort law of the state where the act or omission occurred. 28 U.S.C. §§ 2674 and 1346(b). Here that state is Nevada. Thus, the relevant issue is whether Nevada law recognizes a duty under tort law owed by the landowner to an independent contractor's employee, the breach of which constitutes negligence. The highest court of that state has addressed this precise issue. Under the teachings of *Rinehart*, Nevada has opted to interpret the "risk of physical harm to others" as set forth in Sections 413 and 416 of the Restatement not to include risk of physical harm to employees of an independent contractor. 665 P.2d at 273–74.

Inasmuch as Littlefield's right to recover in this action is limited to relief under Nevada tort law, the respective rights and obligations of the parties to the construction agreement established under contract law, for our purposes here, are legally irrelevant. Clearly, the government had the right to stop construction in the presence of some safety violation. But that simply was a right conferred upon it by the contract, a right that could be enforced under the law of contracts. Under the circumstances at bar, this right does not become an obligation or duty under Nevada tort law, the breach of which would impose liability. We may not mix tort apples with contract oranges.

■ In addition to expressly rejecting the nondelegable tort duty theory, *Rinehart* also held that the landowner, Sierra Pacific Power Company, had no common law duty to take safety precautions during the construction of a generating station cooling tower, because the dangerous condition "was created during the course, and as a necessary consequence of, building the cooling tower." *Rinehart*, 665 P.2d at 272–73.

In this case, as in *Rinehart*, the dangerous condition complained of was created during the course, and as a necessary consequence, of the construction work Frontier–Kemper was performing on the aeration slots. The government in this case was in no better position than the contractor to anticipate dangers and implement precautions. There is no question of the competency or solvency of the independent contractor. Therefore, under Nevada law, the government had no nondelegable duty under Section 416 of the Restatement to employees of Frontier–Kemper, such as Littlefield, and it was error for the district court to impose liability on the United States in this case.

### III

This result is not affected by two cases cited by Littlefield. The Nevada Supreme Court held in *Karadanis v. Newcomb*, 698 P.2d 872 (1985), that a landowner may be liable for injuries to an independent contractor's employee if: (1) the hazardous condition was not "open and obvious;" (2) the condition was not a necessary consequence of the construction; and (3) the landowner maintained possession and control of the premises. *Id.* at 874–75. In *Karadanis* the contractor's construction elevator used in erecting a building had been modified by removing parts of a safety wall, thereby creating the dangerous condition that resulted in injury to a contractor's employee. The Nevada court specifically found that the dangerous condition was not a necessary consequence of the construction. *Id.*

*Rinehart* applies in this case. The muck pile was a necessary consequence of the

tunnel excavation performed by Frontier–Kemper, unlike the elevator discussed in *Karadanis.*

Likewise, the case of *McGarry v. U.S.,* 549 F.2d 587 (9th Cir.1976), *cert. denied,* 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977), does not affect the outcome of this appeal, as it pre-dates the Nevada Supreme Court's *Rinehart* opinion and is otherwise distinguishable. In *McGarry,* the government-landowner was held liable for the electrocution death of a contractor's employee at the Atomic Energy Commission (AEC) Nevada Test Site. 549 F.2d at 591. In the absence of Nevada law concerning the duty of care owed by the employer of a contractor to the contractor's employees, the *McGarry* Court looked to *Thorne v. U.S.,* 479 F.2d 804 (9th Cir.1973), which held when an independent contractor is employed to engage in "extra dangerous" work, the employer of the contractor has a duty to see that the contractor takes proper precautions to protect those who might sustain injury from the work. *McGarry,* 549 F.2d at 590.

The *McGarry* court found no error in imposing this duty of care under the circumstances of the case.

> The power line was owned by the United States. It was to be contemplated that contractors would engage in work [drilling of exploration holes to ascertain geology] in its neighborhood, and the AEC here was aware of the location of the exploratory hole. In our judgment where a contractor is employed to perform work of a sort that may bring the worker into contact with a power line, the work is extra dangerous and the *Thorne* holding is applicable.

*Id.* *McGarry* is thus distinguishable because the hazard which resulted in the death of the worker was not a necessary consequence of the contractor's work.

Littlefield argues that the district court also found a "retained obligation" on the part of the United States as an alternative ground of liability. However, in context, it is apparent that the district court thought the "retained authority" of the United States was part and parcel of the nondele-gable duty discussion. The court stated in its findings:

> Pursuant to the contract entered between Defendant United States of America and Third–Party Defendant Frontier–Kemper, the Bureau of Reclamation reserved the right to inspect the activities of Frontier–Kemper and were authorized under the contract to stop work on removal of the muckpile, but negligently failed to do so. The Court finds that under the circumstances of this case, removal of the muckpile lodged in the 50 [degree] angle portion of the spillway on April 18, 1986, constituted a peculiar or special risk as that term is defined in § 413 and § 416 of the Restatement of Torts 2d. Therefore, Defendant United States of America owed a non-delegable duty to take necessary precautions to address such special risk, and in this case breached its duty to do so.

District Court Decision at 10.

However, the "retained authority" argument avails Littlefield nothing, even if the district court had relied on it as an independent ground of liability. The decision in this case turns on the question of duty. Under *Rinehart,* the United States had no nondelegable duty to employees of the contractor, and it is clear that the government assumed no such duty by reason of its contract with Littlefield's employer. See portion of contract quoted on page 1100–1101, *supra.*

Because our decision concerning the issue of liability is dispositive of the appeal, we find it unnecessary to consider other issues raised by the parties. Accordingly, the decision of the district court is reversed, the judgment against the government vacated, and the case remanded with instructions to dismiss plaintiff-appellee's complaint and the United States' third-party complaint.

**REVERSED AND REMANDED.**