ELIAS SAN JUAN; CECILIO SAN JUAN; RAUL GONZALEZ; AND PAULA LOPEZ, IN HER CAPACITY AS WIDOW AND HEIR OF JAIME GONZALEZ, AS ADMINISTRATRIX FOR THE ESTATE OF JAIME GONZALEZ, AND AS GUARDIAN FOR HEIRS, ROLANDO GONZALEZ, JAIME GONZALEZ, JR., SALVADOR GONZALEZ, AND FERNANDO GONZALEZ, MINOR CHILDREN OF JAIME GONZALEZ, APPELLANTS, *v.* PSC INDUSTRIAL OUTSOURCING, INC., A DELAWARE CORPORATION, AKA PHILIP SERVICES CORPORATION, A DELAWARE CORPORATION, RESPONDENT.

No. 50033

October 7, 2010 240 P.3d 1026

[Rehearing denied December 30, 2010]

*Bolick & Boyer* and *R. Duane Frizell*, Las Vegas; *Callister & Reynolds* and *Matthew Q. Callister*, Las Vegas; *Law Office of Federico Sayre* and *Federico Sayre*, Santa Ana, California, for Appellants.

*Laxalt & Nomura, Ltd.*, and *Robert A. Dotson* and *Ilin L. Rocovits*, Reno, for Respondent.

Before HARDESTY, DOUGLAS and PICKERING, JJ.

## OPINION

By the Court, PICKERING, J.:

Our case law holds that a person who hires an independent contractor is not, without more, vicariously liable to the independent contractor's employees for their employer's torts, even though the job involves inherent danger or "peculiar risk." The issue presented by this appeal is whether this rule depends on the employer being solvent and competent. We hold that it does not. The Nevada workers' compensation system covers injured workers without regard to their employer's solvency. And competence, judged after the fact and without regard to the hirer's knowledge or fault, does not differ meaningfully from negligence. Holding a person who hires an independent contractor vicariously liable when the contractor turns out to be incompetent but not if he proves negligent draws a distinction the law does not support. For these and the other reasons below, we affirm the district court's summary judgment.

# I.

The appellants are Elias San Juan, Cecilio San Juan, Raul Gonzalez, and Paula Lopez individually and as representative of Jaime Gonzalez's estate and minor children (collectively, "San Juan" or San Juan appellants). The men worked for Depressurized Technologies, Inc. (DTI) in Minden, Nevada, sorting and decanting aerosol cans. Respondent Philip Services Corporation (PSC) is in the business of treating and recycling industrial waste. PSC contracted with DTI to decant aerosol cans it collected from industrial and consumer recycling centers and shipped to DTI for processing.

Most aerosols contain propellants, such as propane and butane, which create a risk of fire or explosion if mixed with oxygen and exposed to a spark or open flame. Relatively simple and commonplace precautions can reduce, even eliminate the risk. These precautions include decanting the aerosols in a closed environment (like a glove box) that has been purged of oxygen with nitrogen gas and adhering to the National Electric Code protocols for environments with volatile concentrations of fuel.

DTI had plants in California and Nevada. Its Nevada plant was inspected by the Nevada Department of Environmental Protection (NDEP), as well as by existing and prospective customers, including PSC. DTI developed and used a specially designed machine to automatically decant aerosol cans. When NDEP or others inspected DTI's plant, DTI only showed them its automated process. However, the automated process was slow and had trouble with hair and shaving foams, which tended to clog. This led DTI to devise an alternative, manual decanting process.

The manual process took place in a closed 40-foot shipping container. DTI employees would puncture aerosol cans on spikes and let their contents drain into a drum. A wooden hood vented the gasses released to the outside. DTI employees used a forklift to remove filled drums from the shipping container.

DTI kept its manual decanting operations a secret, hiding them from NDEP, PSC, and other outsiders. When PSC inspected the plant and asked what the shipping container was for, a DTI representative said that NDEP required it for storing unprocessed waste. DTI told San Juan and its other employees to halt manual decanting work, hide the spikes, and lock the container's doors if government inspectors or clients came. It also added a night shift and directed employees, including San Juan, to work behind closed doors during the day.

An explosion occurred while DTI employees were manually decanting cans of hair styling foam. (The cans were full, the hair product being unmarketable for some reason.) The foam smelled good and wasn't thought dangerous, so the ventilation hood, such

as it was, had been turned off. A forklift engine caused a spark that ignited inadequately ventilated gasses in the shipping container. The explosion injured five workers, one fatally. Appellants are the representative of the DTI employee who died and three of the four injured workers who survived.

The San Juan appellants received benefits from the Nevada workers' compensation system.[1] Separately, they sued PSC, alleging that PSC should answer for DTI's negligence. PSC responded by moving for summary judgment on the grounds DTI was an independent service provider, over whose employees PSC exercised no control and for whose negligence PSC was not legally responsible. The district court denied PSC's motion without prejudice. It agreed with San Juan that it would be unfair to decide the case on summary judgment without giving San Juan a chance to probe PSC's relationship with DTI.

Fairly extensive discovery followed. The San Juan appellants were deposed, as were the principals of DTI, PSC, and the East Fork Fire Department, and the experts each side retained. When discovery finished, PSC renewed its summary judgment motion. San Juan filed a countermotion for partial summary judgment. San Juan argued that PSC owed DTI's employees a nondelegable duty of care, subjecting PSC to strict liability for DTI's safety defaults.

The evidence submitted with the cross-motions for summary judgment showed that PSC and DTI had no shared or common ownership. DTI did not fund its start-up or operating costs through PSC, as San Juan originally suspected; DTI generated its cash flow by factoring its accounts receivable with an outside bank. PSC was DTI's largest customer and inspected the Nevada plant before shipping cans to it. However, PSC had no ownership, leasehold, or possessory interest in the plant and no control over its day-to-day operations. Like other DTI customers, PSC paid DTI on a per job basis.

In their depositions, DTI's principal, Walter Gonzalez, PSC representatives, and several San Juan appellants testified without contradiction that PSC, like NDEP (who inspected the plant 17 days before the explosion), did not know about DTI's rogue manual decanting program. The district court found it undisputed that

---

[1]Their recovery came from the Nevada State Uninsured Employers' Claim Fund because DTI had not paid into the system. The district judge took judicial notice of the fact that, also in his court, DTI's principal, Walter Gonzalez, was convicted of two category C felonies for his role in this horrific tragedy. As part of Gonzalez's sentence, the judge required Gonzalez and DTI to reimburse the State Uninsured Employers' Claim Fund for the victims' industrial insurance benefits. There is no evidence that suggests PSC knew of DTI's nonpayment. The summary judgment order notes that when the court sentenced Gonzalez in 2004, the victims had received workers' compensation benefits of $796,240.67.

"DTI did not keep PSC informed as to the details and methods of its work, hid the [manual decanting] work from its customers, and performed [this] work at a time of day to minimize possible discovery by others." It concluded that PSC hired DTI on an independent contractor basis, a point the San Juan appellants "appear to concede," both in the district court and on appeal.

The district court wrote a thorough and thoughtful opinion. It held that, as a matter of law, a person who hires an independent contractor is not vicariously liable to the contractor's employees for torts they or their employer commit. Finding no evidence of active negligence or breach of affirmative duty by PSC, it granted summary judgment in favor of PSC and against San Juan.[2] From this order, San Juan appeals. Applying the de novo review appropriate to summary judgment, *Sustainable Growth v. Jumpers, LLC*, 122 Nev. 53, 61, 128 P.3d 452, 458 (2006), and questions of legal duty, *Lee v. GNLV Corp.*, 117 Nev. 291, 295, 22 P.3d 209, 212 (2001), we affirm.

## II.

At common law, the general rule was that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." Restatement (Second) of Torts § 409 (1965), *cited in Renown Health v. Vanderford*, 126 Nev. 221, 224, 235 P.3d 614, 616 (2010). Exceptions grew up, some statutory, many having to do with landowners contracting for work creating a risk of harm to neighbors or passersby. *See Dixon v. Simpson*, 74 Nev. 358, 332 P.2d 656 (1958) (landowner liable for injuries to a pedestrian who fell into a trench the landowner hired an independent contractor to dig); *Anderson v. Feutsch*, 31 Nev. 501, 103 P. 1013 (1909) (same; statute imposed liability on landowner who commissioned excavation in the sidewalk fronting his business).[3] In Chapter 15, the Restatement (Second) of Torts catalogues the exceptions to the general rule of nonliability stated in section 409. It divides the exceptions into two categories or "topics," depending on the presence (§§ 410-415) or absence (§§ 416-429) of hirer fault—*i.e.*, personal negligence versus vicarious liability:

---

[2]The district court also found that San Juan did not establish that the cans of hair mousse being decanted when the explosion occurred came from PSC. San Juan disputes whether PSC's motion for summary judgment gave fair notice that it challenged proximate cause.

[3]The peculiar-risk doctrine, although historically tied to owners and occupiers of land, has been applied in other contexts. *See* Restatement (Second) of Torts § 416 cmt. d (1965) (giving as an example of a peculiar-risk case an independent contractor hired to haul giant logs who fails to take special precautions to anchor the logs to the truck, injuring a third party).

The rules stated in . . . §§ 416-429, unlike those stated in . . . §§ 410-415, do not rest upon any personal negligence of the employer [of an independent contractor].[4] They are rules of vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault. They arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor.

*See* Restatement (Second) of Torts ch. 15, topic 2, introductory note, at 394 (1965).

In this appeal, San Juan relies on vicarious liability rules. Thus, San Juan maintains that PSC, as the hirer of independent contractor DTI, is vicariously liable to them as employees of DTI, under the peculiar-risk doctrine restated in the Restatement (Second) of Torts sections 416 and 427. Section 416 subjects the hirer of an independent contractor to vicarious liability to others for work the hirer "should recognize as likely to create during its progress a peculiar risk of physical harm *to others* unless special precautions are taken, [where] . . . the contractor [fails] to exercise reasonable care to take such precautions . . . ." (Emphasis added.) Section 427 similarly provides that one who hires "an independent contractor to do work involving a special danger *to others* which the [hirer] knows or has reason to know to be inherent in or normal to the work . . . is subject to liability for physical harm caused *to such others* by the contractor's failure to take reasonable precautions against such danger." (Emphasis added.)

The parties assume, and so shall we, that decanting aerosol cans involves a "peculiar risk" within the meaning of sections 416 and 427.[5] The dispute comes over who can sue the hirer when the

---

[4]To reduce confusion, given that the San Juan appellants are the independent contractor's employees, we have used "hirer" rather than "employer" to refer to the person who hires the independent contractor.

[5]Restatement (Second) of Torts sections 416 and 427 are "closely related to, and to a considerable extent a duplication of" each other, § 427 cmt. a, and "have been applied more or less interchangeably," § 416 cmt. a. The main difference is that section 416 usually applies where the hirer "should anticipate the need for some specific precaution, such as a railing around an excavation in the sidewalk," while section 427 "is more commonly applied where the danger involved in the work calls for a number of precautions, or involves a number of possible hazards, as in the case of blasting, or painting carried on upon a scaffold above the highway." *Id.* § 416 cmt. a. Both involve work that, if adequate precautions are taken, does not carry an unreasonable risk of harm. *Id.* § 427 cmt. d. "Abnormally dangerous activity" under sections 427A, 519, and 520 is different. Although San Juan argued sections 519 and 520 in the district court, it does not on appeal. For simplification, we use "peculiar-risk doctrine" to refer to sections 416 and 427 together.

independent contractor performing peculiarly risky work turns out to be insolvent and/or incompetent. In *Sierra Pacific Power Co. v. Rinehart,* we held that the "others" to whom the Restatement section 416 makes a hirer vicariously liable for its independent contractor's negligence does not include the latter's employees. 99 Nev. 557, 562-63, 665 P.2d 270, 273-74 (1983). Nonetheless, in dictum, *Sierra Pacific* left open the possibility that the hirer could be liable to the independent contractor's employees if the hirer had superior competence and knowledge of the risks associated with the work and/or if the independent contractor was insolvent. *Id.* at 562-63, 665 P.2d at 273-74 (quoting *Nelson v. United States,* 639 F.2d 469, 478 (9th Cir. 1980)); *see also Knutson v. Allis-Chalmers Corp.,* 358 F. Supp. 2d 983, 994-95 (D. Nev. 2005) (*Sierra Pacific* leaves Nevada law unclear on whether "a distinction might be present where the [hirer] was in a better position than the contractor to anticipate dangers and implement precautions, or where there was a question as to the competency or solvency of the independent contractor." (citing *Littlefield v. U.S.,* 927 F.2d 1099, 1104 (9th Cir. 1991))).

*Sierra Pacific* does not establish the competency/insolvency exception San Juan urges. *Sierra Pacific* was an appeal from a judgment after trial in favor of the widow of a deceased employee of an independent contractor that Sierra Pacific hired to construct a cooling tower on its land. 99 Nev. at 559-60, 665 P.2d at 272. This court reversed judgment for the employee's widow, finding no liability as a matter of law. *Id.* at 559, 665 P.2d at 271-72. It held that "the lower court improperly ruled that appellants [the hirers] breached their nondelegable duties, under sections 413 and 416 of the Restatement of Torts, to provide special precautions because [the independent contractor's] employees are *not* included in the term 'others' for the purposes of those sections." *Id.* at 559, 665 P.2d at 272 (emphasis in original). *Sierra Pacific*'s actual holding, as opposed to its dictum, thus supports PSC.

En route to its holding, the *Sierra Pacific* court notes the then-current "split of authority" on whether "others" for purposes of Restatement sections 413 and 416 includes the hirer's independent contractor's employees. 99 Nev. at 562, 665 P.2d at 273.[6] It cites

---

[6]Section 413 falls into the "personal negligence" category established by the Restatement (Second) of Torts ch. 15, topic 1. It subjects a person who hires an independent contractor to liability for harm to others arising out of work by the contractor that the hirer "should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken" where the hirer fails to require such precautions or "fails to exercise reasonable care to provide in some other manner for the taking of such precautions." Restatement (Second) of Torts § 413 (1965). The distinction between section 413 as a direct liability rule and sections 416 and 427 as vicarious liability rules is difficult to grasp, and in *Toland v. Sunland Housing Group, Inc.,* 955 P.2d 504, 512-13 (Cal. 1998), was rejected as a

*Nelson v. United States*, 639 F.2d 469 (9th Cir. 1980), a section 413 case, as one "example" among others, of the rule it was adopting. *See Sierra Pacific*, 99 Nev. at 562-63, 665 P.2d at 273-74 (citing *Welker v. Kennecott Copper Company*, 403 P.2d 330 (Ariz. App. 1965), *rejected on other grounds by Lewis v. Riebe Enter., Inc.*, 825 P.2d 5, 9-10 (Ariz. 1992); *Celender v. Allegheny County Sanitary Authority*, 222 A.2d 461 (Pa. Super. 1966)).[7]

Like the widow in *Sierra Pacific*, the injured employee in *Nelson* won a judgment against his employer's hirer, the United States. *Nelson*, 639 F.2d at 470. The Ninth Circuit reversed, finding the hirer not liable to the independent contractor's employee as a matter of law. *Id.* at 478-79. But in reversing, *Nelson* states:

> As long as an independent contractor is informed about particular safety risks, and is competent and solvent, there is no reason in law or policy why he alone should not be fully responsible for injuries to workmen arising out of the performance of inherently dangerous jobs in which the contractor has special skill and experience not shared with the owner.

*Id.* at 478. San Juan reminds us that *Sierra Pacific* quotes this passage from *Nelson*, 99 Nev. at 563, 665 P.2d at 274, using it to tease out of *Sierra Pacific* the competency/insolvency exception it advocates.

▬▬▬

No modern case has adopted San Juan's proposed exception. What was a "split of authority" in the early 1980s, when *Sierra Pacific* and *Nelson* were decided, has turned into "an overwhelming majority" of state and federal courts now agreeing that a person who hires an independent contractor is not liable to the contractor's employees under the peculiar-risk provisions of Chapter

---

basis for allowing a hirer to be held liable to its independent contractor's employees in the section 413 "personal negligence" context but not the section 416 vicarious liability context per *Privette v. Superior Court (Contreras)*, 854 P.2d 721 (Cal. 1993); *but see Toland*, 955 P.2d at 516 (Werdegar, J., concurring and dissenting). We do not reach section 413 here, because the San Juan appellants only assert section 416 and 427 claims for vicarious liability. We note the section 413 issue for the light it may shed on *Sierra Pacific* and *Nelson*, both of which, unlike this case, involved direct personal negligence claims against the hirer under section 413. (Indeed, it appears that the employee in *Nelson* relied solely on section 413.) Citing the contractor's solvency and competence as a reason for not holding the hirer liable under section 413, where the hirer's personal negligence in requiring or not requiring precautions determines the hirer's liability, makes more sense, at least superficially, than it does in the vicarious liability context.

[7]San Juan also cites *Peck v. Woomack*, 65 Nev. 184, 192 P.2d 874 (1948), but its reliance is misplaced. The injured worker in *Peck* worked for the person who hired the independent contractor. *Id.* at 197, 192 P.2d at 880. The hirer was held liable for putting its own employee in harm's way. Nor were workers' compensation benefits available. *Id.* at 190, 192 P.2d at 877.

15 of the Restatement (Second) of Torts. *Monk v. Virgin Islands Water & Power Authority*, 53 F.3d 1381, 1391-92 & nn.27-31 (3d Cir. 1995) (collecting cases and noting that some jurisdictions, like California and Missouri, have "even overrul[ed] their own] prior interpretations of the Restatement" (citing *Privette v. Superior Court (Contreras)*, 854 P.2d 721, 730 n.4 (Cal. 1993) (overruling *Woolen v. Aerojet General Corporation*, 369 P.2d 708 (Cal. 1962)), and *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384, 390 (Mo. 1991) (overruling *Mallory v. Louisiana Pure Ice & Supply Co.*, 6 S.W.2d 617 (1928)), to which should be added Michigan, *DeShambo v. Nielsen*, 684 N.W.2d 332, 340 (Mich. 2004) (overruling *Vannoy v. City of Warren*, 166 N.W.2d 486 (Mich. Ct. App. 1968)), and the District of Columbia, *Velasquez v. Essex, Condominium Ass'n*, 759 A.2d 676, 681-82 (D.C. 2000) (rejecting *Lindler v. District of Columbia*, 502 F.2d 495 (D.C. Cir. 1974), as "not binding")).

 █

This substantially uniform body of cases returns to tort fundamentals. It emphasizes that, absent control, negligent hiring, or other basis for direct liability, a person who hires an independent contractor to provide a service is not ordinarily liable for the torts the independent contractor commits. Courts created the peculiar-risk exception to this general rule of nonliability "in the late 19th century to ensure that innocent third parties injured by inherently dangerous work performed by an independent contractor for the benefit of the hiring person could sue not only the contractor, but also the hiring person, so that in the event of the contractor's insolvency, the injured person would still have a source of recovery." *Toland v. Sunland Housing Group, Inc.*, 955 P.2d 504, 507 (Cal. 1998). "[A]s between two parties innocent of any personal wrongdoing—the person who contracted for the work and the hapless victim of the contractor's negligence—the risk of loss occasioned by the contracted work was more fairly allocated to the person for whose benefit the job was undertaken." *Privette*, 854 P.2d at 725.

 █

These public policy justifications for an exception to the normal rule of nonliability don't apply when the claimants are "the contractor's employees [who] are compensated for the risks of their employment by a combination of wages, benefits, and entitlement to workers' compensation in the event of an accident." *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 941 (7th Cir. 1986).

> When an employee of the independent contractor hired to do dangerous work suffers a work-related injury, the employee is entitled to recovery under the state's workers' compensation system. That statutory scheme, which affords compensation regardless of fault, advances the same policies that underlie

the doctrine of peculiar risk. Thus, when the contractor's failure to provide safe working conditions results in injury to the contractor's employee, additional recovery from the person who hired the contractor—a non-negligent party— advances no societal interest that is not already served by the workers' compensation system.

*Privette*, 854 P.2d at 723. Because workers' compensation "shields an independent contractor from tort liability to its employees, applying the peculiar-risk doctrine to the independent contractor's employees would illogically and unfairly subject the hiring person, who did nothing to create the risk that caused the injury, to greater liability than that faced by the independent contractor whose negligence caused the employee's injury." *Toland*, 955 P.2d at 506. Also, "an owner should not incur greater exposure by hiring a qualified independent contractor than he would have by using his own employees, who would be limited to a compensation remedy." *Nelson*, 639 F.2d at 475.[8]

San Juan's argument that a hirer's vicarious liability to its independent contractor's employees should depend on the contractor's solvency is unpersuasive. An employee's right to recover workers' compensation benefits does not depend on the solvency of his employer. Even when the independent contractor fails to pay into the industrial insurance system, the employees remain entitled to recover benefits through the Uninsured Employer's Claim Account, as San Juan did here. *See* NRS 616C.220; *supra* note 1. The person who hires an independent contractor "is not an insurer of the employees of an independent contractor. Nor should he be penalized in a case, such as the one here, for the independent contractor's failure to obtain workmen's compensation insurance." *Valdez v. Cillessen & Son, Inc.*, 734 P.2d 1258, 1263 (N.M. 1987) (internal citation omitted). Employers who fail to secure workers' compensation for their employees face criminal sanctions, NRS 616D.200, and civil liability. NRS 616D.230. These statutory measures achieve employer compliance more directly and effectively than would a court-created insolvency exception to the rule against holding a hirer vicariously liable to its independent contractor's employees. *See Bell v. Greg Agee Const., Inc.*, 23 Cal. Rptr. 3d 33, 38-39 (Ct. App. 2004); *Lopez v. C. G. M. Development, Inc.*, 124 Cal. Rptr. 2d 227, 236-37 (Ct. App. 2002).

---

[8] *Nelson* was a maritime case, so workers' compensation was not an available remedy. 639 F.2d at 470-72. Nonetheless, *Nelson* notes that, "[t]o the extent that workmen's compensation laws represent a preferred scheme for redress of occupational injuries, it does appear anomalous and fortuitous for an employee to be in a better position through a revived, as it were, claim against a third party owner than he would be in had his injury occurred in the scope of employment by the owner directly." *Id.* at 475.

Nor are we persuaded by San Juan's argument that PSC's allegedly superior knowledge of the risks and competency, compared to DTI's, justifies imposing vicarious liability on PSC under sections 416 and 427.[9] This argument reprises the concurring and dissenting opinion in *Toland v. Sunland Housing Group, Inc.*, 955 P.2d at 516. And as the *Toland* majority concludes, it "does not hold up under scrutiny." *Id.* at 514. First, a comparative knowledge/competence exception would "eviscerate" the rule that the hirer of an independent contractor whose employees are covered by the workers' compensation system is not vicariously liable to them for their employer's torts because "[i]t would be a rare case indeed" in which a hirer "was entirely ignorant of the methods used and requirements of the work being performed." *Id.* Second, the exception is "impractical[:] . . . How is a trier of fact to determine whether to impose liability based on the relative knowledge[/competence] of two parties, each of whom is 'knowledgeable' [and competent] in some form or degree?" *Id.* Third, the exception would "effectively deprive" hiring persons of "the right to delegate to independent contractors the responsibility of ensuring the safety of their own workers." *Id.* at 515. Finally, "it is illogical and unfair that a landowner or other person who hires an independent contractor should have greater liability for the independent contractor's negligence toward the contractor's employees than the independent contractor whose liability is limited to proving workers' compensation coverage." *Id.* This would create an incentive for a hirer to only use its own employees, even if an independent contractor could perform the work more safely and efficiently. *See Richards v. Republic Silver State Disposal*, 122 Nev. 1213, 1223, 148 P.3d 684, 690 (2006).

For all of these reasons, we affirm the district court's grant of summary judgment in favor of PSC.

HARDESTY and DOUGLAS, JJ., concur.

---

[9]Of note, San Juan does not assert a negligent hiring claim against PSC under section 411. Its position is that a hirer's superior knowledge and competence justify imposition of strict liability—liability without regard to what the hirer knew of the contractor's deficiencies before the injury-producing event. Although San Juan adds in passing that PSC "should have known" that DTI was incompetent, it cites no evidence for this assertion, noting only that the volume of cans being processed *should have aroused suspicion. Missing from* this argument are citations to record evidence that PSC knew what the machine's processing capacity was or that DTI would, when confronted with a backlog, resort to the ridiculous manual decanting system it did. San Juan's negligence per se claim based on the Douglas County Code also fails, again because of lack of record references and proof that PSC maintained or possessed the premises in which DTI conducted its Nevada operations.